51 A.3d 655

**Grayson Darnell TAYLOR**

v.

**STATE of Maryland.**

**No. 95, Sept. Term, 2011.**

Court of Appeals of Maryland.

Aug. 24, 2012.

Reconsideration Denied Sept. 20, 2012.

Geraldine K. Sweeney, Chief Attorney (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Edward J. Kelley, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

BARBERA, J.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established the now well-known two-pronged test for determining whether a criminal defendant received the effective assistance of counsel that

is guaranteed by the Sixth Amendment to the United States Constitution. The test laid out in *Strickland* burdens the defendant with establishing both "that counsel's performance was deficient" *and* that counsel's errors "prejudiced the defense." *Id.* at 687, 104 S.Ct. 2052. This general rule has an exception, however. The defendant is excused from proving the prejudice prong of the *Strickland* test upon a showing that counsel was "burdened by an actual conflict of interest," *id.* at 692, 104 S.Ct. 2052 that is, the conflict is one that "actually affected the adequacy of [counsel's] representation," *Cuyler v. Sullivan,* 446 U.S. 335, 349–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Upon such a showing by the defendant, prejudice to the outcome of trial is presumed. *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052.

In the present case we consider whether Petitioner, Grayson Darnell Taylor, is entitled to the *Cuyler v. Sullivan* "conflict of interest" presumption of prejudice in connection with his ineffectiveness of counsel claim. The conflict of interest stems from defense counsel's filing suit against Petitioner for unpaid legal fees while representing him in his criminal case. For the reasons that follow, we hold that this is a conflict of interest that is governed by the *Sullivan* rubric. Petitioner, however, is entitled under the *Sullivan* rule to the benefit of the presumption of prejudice only if he can show that the conflict of interest is "actual" in the sense that it in fact had an adverse effect upon counsel's performance. Applying that rule to Petitioner's case, we further hold that a remand is necessary for development of the record on the question of whether Petitioner can show that defense counsel's conflict of interest adversely affected his representation of Petitioner.

## I.

The grand jury for Dorchester County returned an indictment charging Petitioner with distributing and possessing a controlled dangerous substance on December 7, 2005.[1] Peti-

---

1. We derive the background from the record developed at Petitioner's trial and during postconviction proceedings. In some instances we

tioner was arrested on the charges in that case in September 2006 and a week or so later retained attorney Christopher Robinson (Robinson) to represent him in that case as well as in a separate criminal case that was scheduled for trial a few days hence and ultimately resulted in a *nolle prosequi.*

When Petitioner retained Robinson to represent him, Robinson required that Petitioner and Jenette Anderson (Anderson), Petitioner's girlfriend at the time, sign the representation agreement so that "[Anderson] would ultimately be responsible for making payment on the note." [2] According to Robinson, "[Petitioner] had told me he was unemployed and I wasn't—and they were asking me to jump into a case with two days to prepare and I wasn't going to turn my life upside down unless I was going to get paid." The agreement established a flat fee of $6,000 for Robinson to represent Petitioner in both of Petitioner's then-pending criminal cases and required either Petitioner or Anderson to pay Robinson $250 the subsequent Friday, as well as $100 every Friday thereafter until the fee was paid.

Petitioner's trial in the present case was scheduled originally for December 12, 2006. On that day, trial was postponed until January 9, 2007. On December 15, 2006, Robinson filed a civil complaint seeking judgment against both Petitioner and Anderson for the unpaid fees due under their agreement.[3]

---

refer to information that, albeit not included among the facts expressly found by the postconviction court, is essentially undisputed and serves here merely to provide context. We defer to the legally pertinent factual findings of the postconviction court for purposes of our analysis.

**2.** Robinson testified at the postconviction hearing that Jenette Anderson was his good friend and it was she who initiated the contact between him and Petitioner.

**3.** There is some discrepancy between the docket entries and Robinson's testimony at the postconviction hearing concerning the original trial date. The docket entries reflect that the trial was scheduled originally for December 12, 2006 and postponed that day on the State's motion, due to another jury trial being held that same day. Robinson testified at the hearing that the trial was scheduled originally for December 15, 2006, the date on which he filed a civil complaint against Petitioner and Anderson.

Robinson ultimately obtained a judgment of $6,000 against Petitioner and Anderson on February 23, 2007, after Petitioner's trial but before sentencing. Later in 2007, presumably after the representation had terminated, Robinson sought to garnish Anderson's wages in satisfaction of the judgment.

The testimony given at Petitioner's trial on January 9, 2007, revealed that, on December 7, 2005, a confidential informant, whose identity was later revealed as Kevin Williams, purchased rock cocaine from an unidentified male in Cambridge, Maryland. The transaction occurred in Williams's car, which had been equipped with a hidden camera. The camera captured and recorded the transaction, and Petitioner was later identified by Corporal Scott Henry as the man who sold Williams the rock cocaine. The videotape of the transaction was admitted into evidence and played (and replayed) for the jury.

Petitioner's defense at trial was that he was not the seller observed in the videotape. On the morning of Petitioner's trial, before the jury was selected, Robinson, on behalf of Petitioner, sought permission to call Anderson as an alibi witness in support of that defense theory. Robinson proffered that Anderson would testify that after Petitioner finished work most nights he would return to Anderson's home in Salisbury and spend the night, and, therefore, he was not always present in Cambridge, where the incident occurred. Robinson explained, though, that Anderson could not testify specifically about Petitioner's whereabouts on the evening of the incident. The trial court did not permit Anderson to testify as an alibi witness because Robinson had not timely disclosed his intention to call her, as the State had requested notice of all alibi witnesses. Robinson did not call Anderson to testify for any other purpose. Ultimately, the jury convicted Petitioner of both counts: distributing and possessing a controlled dangerous substance. At no time before or during the trial was the trial court made aware of Robinson's pending lawsuit against Petitioner.

Robinson filed a Motion for New Trial on behalf of Petitioner, which the trial court heard and denied on March 5, 2007. The court then proceeded immediately to sentencing. At that point, Petitioner attempted to interrupt, stating, "Hold up. Now, can I say something?" The court responded that Petitioner should sit down because he was represented by counsel. Both Robinson and the State argued as to the appropriate sentence, and then the court turned to Petitioner, asking "would you like to say anything?" The following exchange occurred:

[Petitioner]: Yes, sir. Your honor, first of all, in this whole case I wrote for a new trial based on newly discovered evidence.

The Court: I've already ruled on the new trial. I need to talk to you about your sentencing.

[Petitioner]: But they never brought up anything that I sent him. I mean—

The Court: He is, he is your attorney.

[Petitioner]: All right. Well, I'm going to say this, Your Honor. The whole time I'm going through this whole trial I've been trying to talk to my lawyer and tell my lawyer things that I want to say. Ain't nothing been said. It's just like with today.

I mean, him and State's Attorney have been constantly talking about my trial, instead of talking about the best interests of me. And my life is on the line right here. I've been found guilty of a drug charge that I didn't have nothing to do with.

I know I'm innocent. I sit back and I listened to this whole trial. I'm amazed. (Inaudible word) got mad, got upset. You know, told me to be seated. But I can't be seated no more. I mean, this is really hurting me. I done wrote this attorney several times. *He sued me before I even got a chance to come to court for my trial for to get money for this case and that's not—he didn't even get a chance to defend me in this case, yet I'm in court to be sued for money for this case before I'm even tried. That's a*

*conflict of interest.* He never even give me a chance. Anything that I told him to speak about—he never attacked the witness's credibility or anything. Nothing.

\* \* \*

He don't know nothing about me. He don't even want to talk to me, but yet he's my attorney. He's not helping me in no type of way. This is effecting me. I told him a while ago to speak about this and the newly discovered evidence. What did he do? Do you think he put it up here? He don't even speak about it.

\* \* \*

The Court: What you're complaining about, this is not the time or the proceeding to claim or complain about that. What we're dealing with right now is your sentencing and you need to tell me about your sentence.

\* \* \*

[Petitioner:] Christopher Robinson should have to be (inaudible word.) I'm going to go to the attorney grievance on him. It's just that simple, because I just think I got the cold case. And I'm sorry for speaking the way I'm speaking, but it's just out of anger because I feel as though I had told him and told him time again. He doesn't even want as much to take my phone calls. Let alone to come in here and try to defend me, but yet he wants $6,000 and wants to know how much my mom's house is worth. What is all that for? That had nothing to do with my case. If you're representing me, represent me. You're not representing me. [Sic.]

(Emphasis added.) The court did not elicit from Robinson a response to any of what Petitioner had just said, Robinson did not offer a response, and there was no further exchange between the court and Petitioner on the subject of the above colloquy. The court then turned to the discussion about Petitioner's criminal history, following which the court sentenced Petitioner to fourteen years' incarceration. The hearing then concluded.

Petitioner, represented by new counsel, appealed the judgment of conviction. Petitioner presented several claims of error, none of which involved Robinson's lawsuit against Petitioner.[4] The Court of Special Appeals affirmed the conviction in an unreported opinion. Petitioner filed a pro se Petition for Postconviction Relief on September 24, 2009, followed by a pro se amendment to that petition on January 5, 2010. By the time of the postconviction hearing on February 2, 2010, Petitioner had obtained representation from the Office of the Public Defender.

Relevant for purposes of this appeal, Petitioner argued that he had received ineffective assistance of counsel based on Robinson's "inherent conflict" in suing Petitioner during the representation. With respect to that claim, Petitioner testified that, in December 2006, approximately one week before the trial,[5] he learned that Robinson had filed a civil suit against him for unpaid legal fees. Petitioner testified that he did not speak to Robinson until the next court date, and he did not feel "comfortable" with Robinson representing him after the lawsuit was filed. Petitioner acknowledged that he did not inform the trial court before or during the trial that Robinson was suing him, although he did bring it to the attention of the court at sentencing. Petitioner added that he did not consent to Robinson's filing suit against him.

---

4. That Petitioner did not raise on direct appeal a claim of ineffective assistance of counsel is not surprising, as such claims "ordinarily are best left for review on post-conviction and not on direct appeal." *Lettley v. State*, 358 Md. 26, 32, 746 A.2d 392, 395 (2000). We explained in *Lettley* that such claims focus on counsel's deficient performance, and "[t]he record is usually inadequate for appellate review and devoid of a response from defense counsel concerning the allegations." *Id.*, 746 A.2d at 396. But, "[w]here the claim is based on conflict of interest, and the record is clear, ... there is no need to await a post-conviction hearing." *Id.*, 746 A.2d at 396.

5. It is unclear whether Petitioner was referring to the original trial date or the date of the actual trial. If referring to the original trial date, Petitioner's testimony in this regard does not jibe entirely with that of Robinson or the docket entries. *See supra* note 3.

Robinson testified that, in filing suit against Petitioner and Anderson, he did not expect to obtain any money from Petitioner because Petitioner was unemployed; rather he expected to recover from Anderson. Robinson further testified that he did not discuss the suit with Petitioner and, because he did not expect to obtain any money from Petitioner, did not believe the lawsuit would impair his ability to represent Petitioner. Robinson asserted that, in fact, he would not have done anything different in his representation of Petitioner had the suit not been pending. On that score, Robinson testified that he attempted to meet with Petitioner on several occasions to discuss the case, but Petitioner kept breaking the appointments. Finally, on the eve of trial Petitioner, accompanied by Anderson, met with Robinson to discuss the case [6] and for the first time revealed to Robinson that Anderson could provide an alibi for Petitioner for the night of the crime. The court would not permit Robinson to call Anderson, because of the late disclosure of her as an alibi witness. Even so, Robinson testified, Anderson was not "a perfect alibi witness," because she acknowledged that there were nights when Petitioner was not with her.

The postconviction court granted Petitioner the relief of a new trial based on his claim of ineffective assistance of counsel. The court reasoned that Robinson had a conflict of interest pursuant to Rule 1.7 of the Maryland Lawyers' Rules of Professional Conduct (MLRPC). That rule declares in pertinent part that "a lawyer shall not represent a client if the representation involves a conflict of interest" and "[a] conflict of interest exists if ... there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

---

6. Robinson testified that he remembered meeting with Petitioner about the case one other time, other than at motions hearings in court. At that meeting, Robinson and Petitioner viewed the videotape of the incident to determine whether to go to trial.

The postconviction court reasoned that Robinson had a conflict of interest in representing Petitioner because "there was a significant risk that the representation ... would be materially limited by a personal interest of trial counsel," and Robinson never obtained Petitioner's consent to the representation under that circumstance. The court, citing the standard set forth by the Supreme Court in *Sullivan* and this Court's decisions on the subject,[7] ruled that, "[b]ecause an actual conflict of interest existed, a more lenient standard applies that does not require a showing of prejudice." In conclusion, the postconviction court summarized that "trial counsel provided ineffective assistance for failure to identify and disclose an actual conflict of interest that existed at the time of Petitioner's trial."

The State thereafter sought leave to appeal the postconviction ruling. The Court of Special Appeals granted the application and, in an unreported decision, reversed the grant of postconviction relief. That Court reasoned that the caselaw does not support broadening the *Sullivan* rule of presumption of prejudice to conflict of interest cases other than those involving joint representation. The Court of Special Appeals thus applied the general test set forth in *Strickland,* which requires both deficient performance by counsel and resulting prejudice to the outcome of trial. The Court of Special Appeals held that, "in ruling against [Petitioner] on all of his other post conviction issues, the post-conviction court explicitly found that [Petitioner] failed to demonstrate prejudice related to any of them." The intermediate appellate court added that, even if the *Sullivan* conflict of interest rule applied, Petitioner still would be required to demonstrate "that the conflict adversely affected his counsel's performance," and the postconviction court's findings did not include such a finding.

Our grant of the writ followed. *Taylor v. State,* 424 Md. 55, 33 A.3d 981 (2011).

---

**7.** We refer here to *Duvall v. State,* 399 Md. 210, 923 A.2d 81 (2007) and *Lettley,* 358 Md. 26, 746 A.2d 392, which we discuss, *infra.*

## II.

To resolve the ineffectiveness of counsel claim presented in this case, we must consider two separate legal questions: (1) Under *Sullivan,* must a defendant establish that his counsel's conflict of interest adversely affected the representation?; and (2) Does *Sullivan* apply to conflicts of interest beyond concurrent representation? In answering those questions, we are guided by a review of the evolution of the caselaw on the subject from the Supreme Court and this Court.

Under both the Sixth Amendment and Article 21 of the Maryland Declaration of Rights,[8] a criminal defendant is entitled to the assistance of counsel, which means "the right to the effective assistance of counsel." *Duvall v. State,* 399 Md. 210, 220–21, 923 A.2d 81, 88 (2007) (quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052) (quotation mark omitted). The defendant who claims that he or she received ineffective assistance of counsel, as a general rule under the test announced in *Strickland* and followed ever since, must make two showings: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." 466 U.S. at 687, 104 S.Ct. 2052. In regard to the first, "performance" prong of *Strickland,* the defendant must demonstrate that counsel's alleged acts or omissions, based on "the facts of the particular case, viewed as of the time of counsel's conduct," fell "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052. In regard to the second, "prejudice" prong, "[t]he defendant must show that there is a reasonable

---

8. The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." The right is applicable to the states through the Fourteenth Amendment. *Gideon v. Wainwright,* 372 U.S. 335, 343, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Article 21 of the Maryland Declaration of Rights declares: "That in all criminal prosecutions, every man hath a right to ... be allowed counsel[.]"

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

The *Strickland* Court also recognized, however, that, "[i]n certain Sixth Amendment contexts, prejudice is presumed." *Id.* at 692, 104 S.Ct. 2052. Elaborating, the Court stated:

> Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent.

*Id.* (citations omitted).

The Court continued by explaining another, separate circumstance that involves a "more limited" presumption of prejudice:

> One type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice. In *Cuyler v. Sullivan,* 446 U.S. at 345–350 [100 S.Ct. 1708], the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the

defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."

*Id.* (citation omitted) (quoting *Sullivan,* 446 U.S. at 350, 348, 100 S.Ct. 1708 (footnote omitted)).

The Supreme Court's cases on the subject of ineffective assistance of counsel claims based on conflict of interest, both before and since *Strickland,* have produced what we described in *Lettley v. State,* 358 Md. 26, 35, 746 A.2d 392, 397 (2000), as "two distinct lines of analysis." The first, in which the trial court is informed in a timely manner of a potential conflict, is represented by *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). The second, in which the trial court is not informed in a timely manner of a potential conflict, is represented by *Sullivan.*

*Glasser* and *Holloway* both involved situations in which the conflict stemmed from counsel's simultaneous representation of co-defendants. In *Glasser,* the trial court created the conflict by appointing counsel with conflicting interests, over counsel's objection. 315 U.S. at 71, 62 S.Ct. 457. The Glasser Court, commenting on the resulting prejudice to the defendant, noted:

> To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of [the same counsel for both Glasser and his codefendant] is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.

315 U.S. at 75–76, 62 S.Ct. 457. In *Holloway,* the trial court appointed a public defender to represent three defendants who were charged with rape and robbery and thereafter denied counsel's requests to appoint separate counsel before their consolidated trial. 435 U.S. at 477, 98 S.Ct. 1173. The *Holloway* Court read *Glasser* as mandating reversal in such cases. *Id.* at 488, 98 S.Ct. 1173. In so holding, the *Holloway*

Court rejected—as not "susceptible of intelligent, evenhanded application"—a rule requiring the defendant to establish specific prejudice generated by the conflict he and defense counsel had tried, through objection, to avoid.[9] *Id.* at 490, 98 S.Ct. 1173.

*Sullivan* followed in 1980 with a separate line of analysis. In that case, Sullivan and two co-defendants were tried separately but represented by the same two privately-retained lawyers. 446 U.S. at 337–38, 100 S.Ct. 1708. Unlike in *Glasser* and *Holloway*, the conflict of interest issue was not raised in a timely manner to the trial court, but instead was raised in Sullivan's collateral state and federal attacks upon the conviction. *Id.* at 338, 339, 100 S.Ct. 1708. The Supreme Court viewed the case as presenting two issues that were "expressly reserved" in *Holloway:* "The first is whether a state trial judge must inquire into the propriety of multiple representation even though no party lodges an objection. The second is whether the mere possibility of a conflict of interest warrants the conclusion that the defendant was deprived of his right to counsel." *Id.* at 345, 100 S.Ct. 1708.

The *Sullivan* Court answered "no" to the first issue, stating that trial courts are not obligated "to initiate inquiries into the propriety of multiple representation in every case." Instead, the courts can rely on defense counsel's

> ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial. Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist.

*Id.* at 346–47, 100 S.Ct. 1708.

As for the second issue, the *Sullivan* Court concluded: "In order to establish a violation of the Sixth Amendment, a

---

**9.** The Court in *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), which predated *Strickland* by six years, considered the issue of prejudice by asking itself whether the conflict created reversible error. *Id.* at 488–91, 98 S.Ct. 1173.

defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 100 S.Ct. 1708. The *Sullivan* Court read its earlier decisions in *Glasser* and *Holloway* as declaring the following:

> The conflict itself demonstrated a denial of the "right to have the effective assistance of counsel." Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.

*Id.* at 349–50, 100 S.Ct. 1708 (citations omitted) (quoting *Glasser*, 315 U.S. at 76, 62 S.Ct. 457). The *Sullivan* Court held that "the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 350, 100 S.Ct. 1708.

Four years later the Court decided *Strickland*, establishing the general rule for ineffective assistance of counsel claims. Citing *Sullivan*, the *Strickland* Court recognized the exception to the general rule for conflict of interest situations, that is, where counsel operated under an actual conflict of interest that adversely affected counsel's representation, prejudice to the outcome of the trial is presumed. 466 U.S. at 692, 104 S.Ct. 2052.

It was against that backdrop of Supreme Court jurisprudence that, in 2000, we decided *Lettley*. That case, much like *Glasser, Holloway,* and *Sullivan*, involved a claim of ineffectiveness of counsel based on counsel's dual representation. Specifically, counsel represented both Lettley, who was charged with attempted first degree murder, and another man, not charged with the crime at issue, who allegedly confessed to Lettley's attorney that he had committed the crime. *Lettley*, 358 Md. at 29, 746 A.2d at 394. We noted the

"two distinct lines of analysis" that developed in the Supreme Court's cases. *Id.* at 35, 746 A.2d at 397. We further noted that, "[t]o date, the Supreme Court has never squarely resolved the question of whether proof of an adverse effect of a conflict of interest is required to reverse a conviction." *Id.* at 38, 746 A.2d at 399. We reviewed cases from other jurisdictions that addressed this then-extant unresolved issue and concluded:

> The cases reason that when a possible conflict exists, but the trial court is not advised of the conflict in a timely manner, the [*Sullivan*] standard applies. In order to establish a violation of the Sixth Amendment right to effective assistance of counsel, the defendant must show that an actual conflict of interest adversely affected his lawyer's performance. On the other hand, when the defendant advises the trial court of the possibility of a conflict of interest, the *Glasser/Holloway* standard applies. "[A] court confronted with and alerted to possible conflicts of.interest must take adequate steps to ascertain whether the conflicts warrant separate counsel." *Wheat v. United States,* 486 U.S. 153, 160 [108 S.Ct. 1692, 100 L.Ed.2d 140] (1988). . . . If the trial court fails to take "adequate steps" or improperly requires joint or dual representation, then reversal is automatic, without a showing of prejudice, or adverse effect upon the representation.

*Id.* at 38–39, 746 A.2d at 399 (alteration in original).

We then turned to the circumstances present in *Lettley.* We observed that "[a]ppellant timely objected to dual representation and asked the court to permit him to retain different counsel[,] [d]efense counsel presented to the trial judge her basis for asserting a conflict of interest, and the trial court conducted an inquiry," but, nevertheless, refused to permit the appellant to obtain new counsel. *Id.* at 43, 746 A.2d at 401. We concluded that the record clearly demonstrated the existence of an actual conflict and the decision to require counsel to participate, despite this conflict, would result in a reversal of the judgment of conviction. *Id.* at 43, 48, 746 A.2d at 401, 404. This was so because, although dual representation is not

"per se an actual conflict," defense counsel was representing two defendants with opposing interests, as counsel had privileged information pertinent to Lettley's case, "but she could not use that information because to use it would breach her ethical obligation to maintain the confidence of another client." *Id.* at 43, 746 A.2d at 402. Thus, because it was clear that the conflict of interest had adversely affected counsel's representation, we did not need to "tread in those murky waters" of the then-unanswered question of whether a separate showing of adverse effect was required. *Id.* at 42–43, 746 A.2d at 401.

The question left unanswered in *Lettley*—whether, under the *Sullivan* standard, an adverse effect on counsel's performance need be shown to establish an actual conflict of interest warranting reversal of a conviction—was resolved by the Supreme Court two years later, in *Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). In that case, the state trial court appointed an attorney, Saunders, to represent Timothy Hall in a confidential juvenile court matter. *Id.* at 164, 122 S.Ct. 1237. After Hall was found dead, the juvenile court dismissed the charges against Hall, noting on the docket that he was deceased and that Saunders had represented him. *Id.* at 164–65, 122 S.Ct. 1237. One week later, the same judge who dismissed the charges then appointed Saunders to represent Mickens, on trial for Hall's murder. *Id.* at 165, 122 S.Ct. 1237. Saunders did not disclose to the trial judge, Saunders's co-counsel, or Mickens this potential conflict based on the prior representation of Hall, the victim. *Id.* Mickens only learned of the conflict accidentally when a clerk mistakenly disclosed the file to Mickens's habeas counsel after Mickens had been convicted and sentenced to death. *Id.* at 164–65, 122 S.Ct. 1237.

The precise question before the *Mickens* Court involved "the effect of a trial court's failure to inquire into a potential conflict upon the *Sullivan* rule that deficient performance of counsel must be shown." *Id.* at 174, 122 S.Ct. 1237. The answer to that question is not particularly relevant to the matter before this Court because Petitioner does not assert that the trial court had a duty to inquire into a potential

conflict. What is pertinent to the matter *sub judice* is that the *Mickens* Court clarified the defendant's burden of proof in order to obtain the benefit of presumed prejudice under *Sullivan,* including whether *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981),[10] eliminated the requirement that a defendant demonstrate that the conflict adversely affected the representation.

The *Mickens* Court first rejected the assertion that *Wood* had created an "unambiguous rule" that, when the trial court has a duty to inquire about a potential conflict but fails to do so, a defendant is entitled to reversal upon a showing only that counsel was subject to a conflict of interest, not also that the conflict had an adverse effect on the representation.[11] 535

---

**10.** *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981), decided less than a year after *Sullivan,* also involved a conflict of interest, which the Court recognized, but did not resolve. In that case, the state court revoked the probation of three indigent defendants because they had failed to make monthly payments on their fines. *Id.* at 262, 101 S.Ct. 1097. The attorney who had represented the three defendants continuously, including before the Supreme Court, was compensated by the defendants' employer. *Id.* at 266, 101 S.Ct. 1097. The employer had agreed to pay the fines for the defendants but had not completely satisfied that promise. *Id.* at 266–67, 101 S.Ct. 1097. Although the matter was before the Supreme Court to consider the defendants' Equal Protection Clause challenge, based on the revocation of probation for the indigent defendants' failure to pay fines, the Court did not reach that issue. *Id.* at 262–63, 101 S.Ct. 1097. The *Wood* Court instead addressed the possible conflict in the attorney's representation, noting that the conflicting interests of employer and defendants "was sufficiently apparent at the time of the revocation hearing to impose upon the court a duty to inquire further." *Id.* at 272, 101 S.Ct. 1097. The *Wood* Court then remanded the matter to the state trial court "to determine whether the conflict of interest that [the] record strongly suggests actually existed," *id.* at 273, 101 S.Ct. 1097 because the record was not sufficient for the Court to determine "whether counsel was influenced in his basic strategic decisions by the interests of the employer who hired him," *id.* at 272, 101 S.Ct. 1097.

**11.** Likewise, the *Mickens* Court rejected the proposition that automatic reversal was dependent upon whether the trial court had neglected its duty to inquire into a potential conflict, as opposed to the adverse effect of a conflict of interest on counsel's performance. 535 U.S. at 172, 122 S.Ct. 1237. The Court explained that "[t]he trial court's awareness of a potential conflict neither renders it more likely that counsel's performance was significantly affected nor in any other way renders the verdict unreliable." *Id.* at 173, 122 S.Ct. 1237.

U.S. at 170–71, 122 S.Ct. 1237. The *Mickens* Court described the holding and language of the remand instruction in *Wood*—that "an actual conflict of interest existed"—as simply "shorthand for the statement in *Sullivan* that 'a defendant who shows that a conflict of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief.'" *Id.* at 171, 122 S.Ct. 1237 (emphasis in original) (quoting *Sullivan,* 446 U.S. at 349–50, 100 S.Ct. 1708).

Noteworthy for present purposes, the *Mickens* Court clarified that "the *Sullivan* standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. *An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." Id.* at 172 n. 5, 122 S.Ct. 1237 (emphasis added). The Court added that, under *Sullivan,* "the rule [to be] applied when the trial judge is not aware of the conflict (and thus not obligated to inquire) is that prejudice will be presumed only if the conflict has significantly affected counsel's performance—thereby rendering the verdict unreliable, even though *Strickland* prejudice cannot be shown." *Id.* at 172–73, 122 S.Ct. 1237.

Before concluding, the *Mickens* Court cautioned that it had not rendered a decision on the underlying assumption of the issue presented—that the *Sullivan* rule applied to the type of conflict presented by the *Mickens* facts and, therefore, no showing of prejudice was required. *Id.* at 174, 122 S.Ct. 1237. The Court recognized that the "assumption was not unreasonable in light of the holdings of Courts of Appeals, which have applied *Sullivan* 'unblinkingly' to 'all kinds of alleged attorney ethical conflicts,'" *id.* (quoting *Beets v. Scott,* 65 F.3d 1258, 1266 (5th Cir.1995) (en banc)), but highlighted "that the language of *Sullivan* itself does not clearly establish, or indeed even support, such expansive application," *id.* at 175, 122 S.Ct. 1237. The *Mickens* Court explained further that both *Sullivan* and *Holloway* relied on the "high probability of prejudice arising from multiple concurrent representation, and the difficulty of proving that prejudice" and recognized, moreover,

that "[n]ot all attorney conflicts present comparable difficulties." *Id.* Finally, the Court stressed that "[t]he purpose of our *Holloway* and *Sullivan* exceptions from the ordinary requirements of *Strickland,* however, is not to enforce the Canons of Legal Ethics, but to apply needed prophylaxis in situations where *Strickland* itself is evidently inadequate to assure vindication of the defendant's Sixth Amendment right to counsel." *Id.* at 176, 122 S.Ct. 1237.

Several years after *Mickens,* we considered another concurrent representation conflict case in *Duvall.* In that case, we considered, similar to the conflict presented in *Lettley,* whether the trial court erred by denying a postponement for Duvall's counsel, an attorney from the Office of the Public Defender, to resolve an actual conflict of interest because another attorney from the Office represented another individual, in an unrelated matter, who Duvall believed had committed the crime for which Duvall was charged. 399 Md. at 213–14, 923 A.2d at 83. We recognized that, under *Mickens,* a criminal defendant must establish that a "*potential* conflict of interest adversely affected his counsel's performance before he would be entitled to reversal." *Id.* at 227, 923 A.2d at 92. We held that, in Duvall's case, there was an actual conflict of interest, evidenced by his counsel's timely objection to the conflict and her explanation to the court of the conflicting interests between her duties to two clients of the Office. *Id.* at 234–35, 923 A.2d at 96.

Neither *Lettley* (pre-*Mickens* ) nor *Duvall* (post-*Mickens* ) directly addressed circumstances beyond concurrent representation conflicts, although the conflicts in those cases were not co-defendant representation conflicts. Both cases, however, did note this Court's recognition that "the defendant's right to conflict-free representation is not limited to situations involving multiple representation, but extends to any situation in which defense counsel owes conflicting duties to the defendant and some other third person." *Duvall,* 399 Md. at 237, 923 A.2d at 97 (quoting *Lettley,* 358 Md. at 34, 746 A.2d at 397). Indeed, the Court of Special Appeals has considered ineffective assistance claims involving personal conflicts of counsel

and applied the *Sullivan* analysis, where the defendant failed to object in a timely manner. *See Catala v. State,* 168 Md.App. 438, 897 A.2d 257, *cert. denied,* 396 Md. 14, 912 A.2d 649 (2006) (applying the *Sullivan* rule to determine an ineffective assistance of counsel claim where the defendant's attorney had accepted a position with the State's Attorney's Office).

*This case*

■ Petitioner asserts that he received ineffective assistance of counsel because Robinson operated under a self-created conflict of interest when he sued Petitioner for fees before his criminal trial commenced and without disclosing the conflict. Had Robinson informed the trial court, Petitioner asserts, Petitioner "would have had an opportunity to object to his continued representation, and Petitioner could have obtained new counsel whom he could timely trust with his alibi evidence." Petitioner asserts that he need not establish prejudice under the *Sullivan* exception.[12] The State counters that *Sullivan's* exception that presumes prejudice in attorney conflict claims is narrow and does not apply to circumstances beyond multiple representation. Instead, the State asserts, the regular *Strickland* standard applies.

■ We have emphasized repeatedly that "[a] defense attorney's representation must be untrammeled and unimpaired, unrestrained by commitments to others; counsel's loyalty must be undivided, leaving counsel free from any conflict of interest." *Duvall,* 399 Md. at 221–22, 923 A.2d at 88 (quoting *Lettley,* 358 Md. at 34, 746 A.2d at 396) (alteration in original).

---

**12.** Petitioner first offers briefly that the type of conflict present in this case "is perhaps most closely related to the cases[,] [*see, e.g., United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984),] where there is a constructive denial of the assistance of counsel altogether, for where the lawyer commits an ethical violation which results in a breach of trust and the client feels he cannot confide and rely on the attorney, he may as well not have an attorney." We reject this proposition, similarly briefly, because, based on the record, Robinson's representation cannot be said to have been an "[a]ctual or constructive denial of the assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The same concern that led to the presumption of prejudice in multiple representation conflict cases, such as *Glasser* and *Sullivan*, is equally present in personal interest attorney conflict cases where the attorney has created an adversarial relationship with his client by initiating a civil suit against the client during the course of representation. This is because the precise degree of prejudice to the outcome of the trial that could result from an actual attorney-created conflict is too difficult to determine, and the right to effective assistance of counsel, pursuant to both the Sixth Amendment and Article 21, remains too fundamental to risk. Such a conflict, where the attorney-created adversarial relationship adversely affects counsel's representation, infects the attorney-client relationship with an element of distrust, likely to affect the reliability of the trial and "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. We hold, therefore, that the *Sullivan* analysis and presumption of prejudice applies when a defendant alleges ineffective assistance of counsel based on an attorney's personal conflict of interest due to the attorney's filing suit against the client before trial for unpaid legal fees arising from the very action where the attorney is representing the client, creating an adversarial relationship during the course of representation.[13]

---

**13.** We recognize that, particularly since *Mickens*, there is no clear rule across jurisdictions. Several jurisdictions have not hesitated to apply the *Sullivan* presumption to personal interest conflicts, given that the question of *Sullivan's* extent remains open, while others have applied the limitation expressed in the *Mickens* dicta, concluding that *Sullivan* is not appropriate beyond multiple representation conflict cases. *See* Anne Bowen Poulin, *Conflicts of Interest in Criminal Cases: Should the Prosecution Have a Duty to Disclose?*, 47 Am.Crim. L.Rev. 1135, 1142 & n. 34, 1141 & n. 31 (2010) (noting the "crucial question" post-*Mickens*, of whether the presumption of prejudice would apply beyond concurrent representation conflicts and citing cases). *See, e.g., Alessi v. State*, 969 So.2d 430, 436 (Fla.Dist.Ct.App.2007) (noting an "apparent pullback in the federal courts" after *Mickens*, but recognizing that "the Florida Supreme Court has continued to apply the *Sullivan* exception beyond joint representation conflicts to successive representation and financial conflicts of interest"). We join those states continuing to apply *Sullivan* to various types of conflicts, as explained *supra*. We believe that the presumption is appropriate in this case, whether the

 We have mentioned that Petitioner, in order to meet the burden of proving ineffective assistance of counsel, must demonstrate that there was an actual conflict of interest in order for prejudice to the defense to be presumed. An "actual conflict of interest," for purposes of this analysis, is a conflict that adversely affects counsel's representation of the defendant. *See Mickens,* 535 U.S. at 172 n. 5, 122 S.Ct. 1237.

 It is clear that attorney Robinson's conduct in filing suit against Petitioner, without obtaining his informed consent to continue representation notwithstanding the conflict, created a real potential of an ethical conflict of interest, in violation of the MLRPC. MLRPC 1.7 states:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a conflict of interest. **A conflict of interest exists if:**

(1) the representation of one client will be directly adverse to another client; or

(2) **there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.**

(b) Notwithstanding the existence of a conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

right is rooted in the Sixth Amendment to the United States Constitution or Article 21 of the Maryland Declaration of Rights.

(4) each affected client gives informed consent, confirmed in writing.

(Emphasis added).

Despite the mandate of MLRPC 1.7, Robinson continued to represent Petitioner after he filed a civil suit against Petitioner and Anderson seeking to collect the agreed-upon fees for his representation of Petitioner in his upcoming criminal trial and the earlier case. Moreover, the suit remained active during the criminal trial. Robinson never obtained Petitioner's informed consent, much less discussed the matter, even though there existed a "significant risk that the representation . . . [would] be materially limited . . . by a personal interest of [Robinson]." Robinson testified that his creation of the adversarial relationship did not affect his representation of Petitioner, but the conduct and his testimony together demonstrate ignorance of the impact his filing suit might have had on his client, which could have affected the representation.

That said, the requirements of establishing ineffective assistance of counsel are not coextensive with the requirements of establishing a potential violation of the MLRPC. Indeed, we recognize that the purpose of an ineffective assistance of counsel claim is not to enforce legal ethics. *See Mickens*, 535 U.S. at 176, 122 S.Ct. 1237. The potential violation of MLRPC 1.7, though, at least establishes that Robinson operated under a potential conflict. Only if Robinson's conflict was an "actual conflict of interest," due to its adverse effect on his representation of Petitioner, would Petitioner then be entitled to a presumption of prejudice to the outcome of his trial.

Petitioner asserts that, "[i]f proof of effect upon representation is required to presume prejudice, the fact that defense counsel and his client did not speak about the case between Sept. 24 and January 9, during which time the deadline for providing alibi witness notice expired, should suffice." The State counters that, even if *Sullivan* applies, Petitioner was required to show that the conflict had an adverse effect on the representation, but the Petitioner failed to make that showing.

The State asserts that Robinson, at the postconviction hearing, testified that the civil suit did not affect his representation of Petitioner, and the record from the criminal trial supports that "Robinson fully pursued the most viable defense available to [Petitioner] under the circumstances."

We have found, and Petitioner has alerted us to, several cases discussing the circumstance-specific determination of whether a personal conflict of interest adversely affected counsel's representation of a defendant. *See, e.g., Rubin v. Gee*, 292 F.3d 396, 399–401 (4th Cir.2002) (noting that "[a]dverse effect cannot be presumed from the mere existence of a conflict of interest," though concluding that the conflict in that case adversely affected the representation, where attorneys advised Rubin to leave the scene of the crime and register in a hospital under a false name and continued to represent her as part of the defense team, because, although it would have been in Rubin's best interest to explain away her actions based on advice from counsel, counsel did not inquire about the issue and did not testify, protecting their own interest in avoiding criminal liability); *Catala*, 168 Md.App. at 459–60, 897 A.2d at 270 (where Catala's attorney had accepted a position with the State's Attorney's office and was scheduled to begin employment shortly after Catala's trial, holding that Catala failed to demonstrate that his attorney operated under an actual conflict, as opposed to a theoretical division of loyalties, because the record did not reflect that counsel "would give less than zealous performance," and he "had no reason to want to 'curry favor' with his new employer").

Two cases from other jurisdictions are of particular interest because they involved personal conflicts somewhat similar to the conflict complained of here. In *State v. Wiley*, 232 Neb. 642, 441 N.W.2d 629, 631 (1989), the appellant asserted a denial of effective assistance of counsel "because trial counsel had at the time of trial taken a judgment against the appellant which was not satisfied at the time the appellant pled guilty." Without specifying whether the judgment trial counsel had obtained was for legal fees related to the representation or, instead, had arisen independently, the Supreme Court of

Nebraska rejected "a per se rule finding an inherent conflict of interest ... when an attorney has an unsatisfied money judgment against an individual and undertakes to represent that individual in a criminal proceeding." *Id.* Turning to the applicable analysis, that the appellant needed to demonstrate active representation of conflicting interests and adverse effect on the representation, the court explained that "[t]he only conceivable conflict that the appellant could be referring to is the allegedly opposing interests of [appellant] in receiving the best defense available, and the personal financial interest of his trial counsel in receiving the money owed him by the appellant." *Id.* at 632. The court reasoned that the only effect on the defense, despite this potential conflict, "is that his trial counsel would work as hard as possible to have the appellant acquitted of all charges" so that counsel could get paid. *Id.* Therefore, the appellant's claim failed.

In *Winkler v. Keane*, 7 F.3d 304 (2d Cir.1993), *cert. denied*, 511 U.S. 1022, 114 S.Ct. 1407, 128 L.Ed.2d 79 (1994), the United States Court of Appeals for the Second Circuit considered Richard Winkler's appeal from the District Court's dismissal of his petition for a writ of habeas corpus, *id.* at 305, which Winkler sought after being convicted of murdering his father, *id.* at 306. Winkler's attorney had entered into a contingency fee agreement with Winkler and some of his family members. *Id.* The agreement provided, in part, that Winkler's grandmother would pay $18,000 from the inheritance she received from Winkler's father. *Id.* Additionally, the agreement provided that, "in the event Richard Winkler is acquitted or found not guilty by reason of insanity, or some other legal reasons, and inherits from the Estate of [his father], ... Richard Winkler shall pay, as additional legal fees, the sum of $15,000.00." *Id.* The Second Circuit reasoned that there was a conflict of interest, but deferred to "the state court's finding that Winkler was not adversely affected by his counsel's representation." *Id.* at 307. Winkler had argued that his counsel had failed to initiate plea bargaining because of the disincentive to do so created by the contingency fee agreement, but the court held that the record did not support

that claim because Winkler had not been interested in plea bargaining. *Id.* at 309. The court similarly rejected Winkler's other claims of adverse effect as not supported by the state court's findings. *Id.* at 310.

A review of these cases leads to the conclusion that the inquiry is circumstance-specific. Some cases focus on what the attorney failed to do because of the conflict, which, in turn, was not in the client's best interest. Here, the scenario is somewhat different. Given Petitioner's argument, the conclusion does not depend solely on what Robinson did not do. It also depends on what, according to Petitioner, Petitioner may have withheld or otherwise was unable to communicate timely in aid of his possible defenses because of Robinson's self-created adversarial relationship, which ultimately adversely affected Robinson's representation of Petitioner.

The postconviction court found that counsel's representation was infected with an "actual conflict of interest," but the court did not indicate whether the assumed ethical conflict of interest adversely affected the representation, so as to give rise to a violation of the right to counsel pursuant to the Sixth Amendment and the Maryland Declaration of Rights. We believe it to be a fair reading of the court's opinion and order that the court operated from the premise that Robinson had violated MLRPC 1.7 and concluded, without further consideration of the facts of the case, that such violation automatically constituted a violation of the constitutional entitlement to effective assistance of counsel.

We hold therefore that a remand is necessary under the circumstances of this case. On remand, the court must consider the case-specific facts to determine whether, and explicate how, the potential conflict of interest based on Robinson's presumed MLRPC 1.7 violation adversely affected (if at all) his representation of Petitioner. Specifically, Petitioner has alleged that his lack of confidence in Robinson's representation caused him to withhold information in aid of his defense. The trial court must determine whether Petitioner was reticent and, if so, how that had an adverse effect on

Robinson's representation of Petitioner. In that regard, we direct the court to the three-part test set forth in *Mickens v. Taylor*, 240 F.3d 348 (4th Cir.2001), *aff'd*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), which we hereby adopt, for determining whether counsel's potential conflict of interest had an actual adverse effect upon his performance. That test requires a petitioner to establish: (1) "a plausible alternative defense strategy or tactic that his defense counsel might have pursued"; (2) "that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney"; and (3) "that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." [14] *Id.* at 361.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THIS MATTER TO THE CIRCUIT COURT FOR DORCHESTER COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY DOR-CHESTER COUNTY.**

---

14. In *Mickens v. Taylor*, 240 F.3d 348 (4th Cir.2001) (en banc), *aff'd*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), the United States Court of Appeals applied this three-prong test and held that Mickens failed to establish that his attorney's potential conflict of interest adversely affected the representation because many of the asserted alternative defense strategies "were not viable ... and that any viable defense strategies were not linked to his attorney's conflict of interest." *Id.* at 362. The Supreme Court affirmed the judgment of the Fourth Circuit, which had, in turn, affirmed the District Court's denial of Mickens's petition for a writ of habeas corpus.