*Purnell A. Shortall v. State of Maryland*
Case No. 0170 September Term, 2017

## HEADNOTE

**CRIMINAL PROCEDURE – POST-CONVICTION RELIEF – INEFFECTIVE ASSISTANCE OF COUNSEL – FAILURE TO OBJECT TO JURY INSTRUCTION.** In a case in which there is a potentially meritorious argument that the instruction is erroneous, and there is no possible strategic benefit to the defendant from having the jury receive the arguably incorrect instruction, defense counsel renders deficient performance by failing to object and preserve that point for appeal pursuant to Maryland Rule 4-325(e).

**CRIMINAL LAW – DISPOSAL OF SEWAGE – SEPARATE VIOLATIONS.** In 2012, Title 26 of the Maryland Code of Regulations provided in COMAR 26.04.02.02E: "A person may not dispose of sewage, body, or industrial wastes, in any manner which may cause pollution of the ground surface, the waters of the State, or create a nuisance." COMAR 26.04.02.02F provided: "A person may only dispose of sewage, body, or industrial wastes in accordance with an approved on-site sewage disposal permit or other method of disposal approved by the Approving Authority." Violators can be prosecuted pursuant to Maryland Code (1982, 2014 Repl. Vol.), Environment Article ("Env."), § 9-343(a)(1), which provides that an individual who violates "any provision of or fails to perform any duty imposed by a . . . regulation . . . is guilty of a misdemeanor . . . ." Furthermore, Env. § 9-343(a)(3) states: "Each day on which a violation occurs is a separate violation under this subsection." To prove a separate criminal violation of one of these two regulations under Env. § 9-343(a)(3), there must be evidence of an act of disposal occurring on each separate day.

Circuit Court for Dorchester County
Case No. K-14-015217

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0170

September Term, 2017

_____

PURNELL A. SHORTALL

v.

STATE OF MARYLAND

_____

Meredith,
Graeff,
Arthur,

JJ.*

_____

Opinion by Meredith, J.

_____

Filed:  April 26, 2018

* Judge Christopher B. Kehoe did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

At the conclusion of a jury trial in the Circuit Court for Dorchester County, Purnell Shortall, appellant, was convicted of five misdemeanor counts of failure to comply with COMAR 26.04.02.02E for disposing of sewage in a manner which may cause pollution of the ground surface, and five misdemeanor counts of failure to comply with COMAR 26.04.02.02F for disposing of sewage without an approved permit.[1] After sentencing, Shortall did not appeal, but, within a year, he filed a petition for post-conviction relief, claiming ineffective assistance of counsel. The post-conviction court denied his petition for post-conviction relief. Thereafter, Shortall filed an application for leave to appeal the post-conviction court's ruling. We initially denied Shortall's application for leave to appeal, but Shortall timely filed a motion for reconsideration, which we granted to permit him to pursue an appeal raising the following question:

> Whether the post-conviction court erred in not finding that Mr. Shortall was denied his right to effective assistance of counsel when defense counsel failed to object to the trial court's instruction on the continuing violation theory?

For the reasons explained herein, we conclude that trial counsel was ineffective in failing to object to the incorrect instruction regarding multiple separate violations. We conclude that Shortall should have been convicted of only a single violation of each regulation, and we will vacate the four additional convictions as to each regulation.

---

[1] These two regulations were recodified subsequent to the dates Shortall was charged with violating COMAR 26.04.02.02E and 26.04.02.02F. As recodified, the conduct previously prohibited by COMAR 26.04.02.02E is now prohibited by COMAR 26.04.02.02D; and the conduct previously prohibited by COMAR 26.04.02.02F is now prohibited by COMAR 26.04.02.02E. The language of both regulations remains the same as prior to recodification, and we will refer to the regulations in this opinion by the numbers (and letters) in effect at the time charges were filed.

**Facts and Procedural History**

There was evidence at trial of the following. On December 5, 2012, Richard Littlefield and Brian Baumgartner, who were both licensed environmental health specialists with the Maryland Department of the Environment, performed a routine inspection at the property of Shortall Building Supplies in Cordova, Maryland. During this inspection, the inspectors observed a white four-inch PVC pipe connected to a building on the property that was used for vehicle maintenance. The pipe "extend[ed] from a slope at the rear of the property directed towards the" nearby woods. Upon further investigation, the inspectors discovered evidence that "there was a recent discharge of sewage," namely, human feces and toilet paper, "lying on the ground just beyond the end of the pipe."

The following day, Ann Morse, the Director of Environmental Health for the Talbot County Health Department, visited the property of Shortall Building Supplies. During her conversation with Shortall, Shortall "admitted [to Morse] that it was a discharge pipe from the bathroom, that he put it there, and that he put the bathroom in the building." No specific corrective action was ordered at that time.

On December 7, Morse returned with Nony Howell, who was a regional consultant for onsite wastewater with the Maryland Department of Environment. At that time, Howell told Shortall that "the only corrective action to be taken was to stop using the pipe for now." Howell also told Shortall that he would have to cap the line.

On January 24, 2013, Howell returned to the property and noticed a sign over the bathroom door directing employees not to use the bathroom. The originally observed discharge was still present on this date.

Michelle Burroughs, Regulatory Compliance Engineer for the Maryland Department of the Environment, visited the property on March 15, 2013, to investigate a "potential unauthorized discharge to the waters of the State." Burroughs tested the sink near the bathroom in the maintenance building, and observed that the water from the sink flowed out of the discharge pipe. Burroughs told Shortall that the use of this pipe was "unauthorized discharge to waters of the State . . . ." On May 3, Burroughs returned to the property and saw that Shortall had capped the line. On May 16, when Burroughs made her final visit to the property, the pipe was covered with dirt.

Shortall was charged with five separate violations of two regulations under Title 26 of the Maryland Code of Regulations, for a total of ten regulatory violations. COMAR 26.04.02.02E stated: "A person may not **dispose of sewage**, body, or industrial wastes, in any manner which may cause pollution of the ground surface, the waters of the State, or create a nuisance." (Emphasis added.) COMAR 26.04.02.02F, stated: "**A person may only dispose of sewage**, body, or industrial wastes in accordance **with an approved on-site sewage disposal permit** or other method of disposal approved by the Approving Authority." (Emphasis added.) According to the Maryland Code (1982, 2014 Repl. Vol.), Environment Article ("Env."), § 9-343(a)(1), an individual who violates "any provision of or fails to perform any duty imposed by a . . . regulation . . . is guilty of a

3

misdemeanor . . . ." Furthermore, Env. § 9-343(a)(3) states: "**Each day on which a violation occurs is a separate violation** under this subsection." (Emphasis added.)[2]

At the request of the State, the trial court gave the following non-pattern jury instruction regarding the multiple charges of violating the two regulations:

> [THE COURT]:    The Defendant is charged with the same listed offense on different dates. Essentially you'll have five – you'll have a charge that has five alleged dates, another charge that has five alleged dates. **Pursuant to Maryland law for these specific charges every day on which a violation is still present constitutes a separate offense until the date the violation is corrected**. Counsel, any exceptions to the jury instructions given?
>
> [THE STATE]:    No, Your Honor.
>
> [DEFENSE COUNSEL]:    No, Your Honor.

(Emphasis added.)

Following Shortall's conviction of five separate counts of violating each regulation, the court sentenced Shortall to two years in prison, all but 90 days suspended, plus five years of supervised probation and a fine and community service.

Shortall failed to appeal, but he filed a petition for post-conviction relief, asserting, *inter alia*, that defense counsel's failure to object to the above-quoted jury instruction deprived him of effective assistance of counsel because the instruction misstated the law and exposed him to multiple convictions for "a violation." At Shortall's post-conviction hearing, Shortall's trial counsel testified that his decision not to object resulted from his own research and interpretation of this unsettled area of law. He said:

---

[2] Env. § 9-343 was last amended in 2004.

4

[DEFENSE COUNSEL]: I don't know that I would call [the proposed jury instruction] unusual. I was concerned about the jury instruction regarding the continuing nature offense. And [the State] . . . had cited various cases. We pulled those cases and read them and felt she had accurately represented the law as we understood it.

Defense counsel explained that his initial trial strategy was "to exclude anything . . . that would reference a continuing violation. So we researched that. And coupled with our research and the cases that [the State] had provided we did not think that we had the legal argument." In addition to this research, defense counsel testified that he contacted local attorneys who specialize in this area of law for guidance:

[SHORTALL'S POST-CONVICTION COUNSEL]: And what was the scope of what you evaluated for purposes of that [proposed jury] instruction? In other words, you said you looked at the cases that [the prosecutor] provided. Did you look beyond those cases for example in other States or Federal jurisdictions?

[DEFENSE COUNSEL]: Honestly I believe we called your office. Peter (inaudible).

[SHORTALL'S POST-CONVICTION COUNSEL]: [My law firm]?

[DEFENSE COUNSEL]: Yes, and spoke with you. But outside of that we had – no, I can't say that definitively we looked at any Federal regulations or other States. We researched Maryland law to see . . . what we could do with the continuum [sic].

The post-conviction court found that Shortall's defense counsel's failure to object did not constitute deficient performance, and the court therefore denied Shortall's ineffective assistance of counsel claim. The court also ruled, in the alternative, that there was no prejudice. The post-conviction court's opinion stated:

Petitioner claims that the "continuing violation" instruction given to the jury was a misrepresentation of § 9-343(a)(3) of the Environment

5

Article and resulted in convictions for crimes he did not commit. The instruction given to the jury was:

> The Defendant is charged with the same listed offense on different dates. Essentially you'll have five – you'll have a charge that has five alleged dates, another charge that has five alleged dates. Pursuant to Maryland law for these specific charges every day on which a violation is still present constitutes a separate offense until the date the violation is corrected. (Trial Transcript 8/6/14, at 37)

The Environment[] Article § 9-343(a)(3) provides, "Each day on which a violation occurs is a separate violation under this subsection."

Petitioner argues that the phrase "is still present" in the jury instruction materially differs from the statute's actual term: "occurs." In particular, Petitioner contends that the statute, by use of the term "occurs," requires the State to prove an actual affirmative "occurrence" on a particular date in order for the Petitioner to be convicted for an offense on that date. Petitioner argues that he was convicted on ten counts[FN1] not because the State proved an "occurrence" on each of the ten dates, but rather, because disposed waste remained on the site for the days covered by the counts. [Footnote 1: The ten counts refer to five counts of disposing [of] waste in a manner which may cause pollution of the ground surface and five counts of disposing [of] waste without an approved on-site sewage disposal permit.]

He also contends that convictions under the continuing violation doctrine are particularly unjust, as the Petitioner incurred criminal charges during the period of time he was awaiting direction from the State agency as to how to remedy the alleged infractions. In short, the Petitioner contends that the continuing violation doctrine is inapplicable to these charges, and trial counsel's failure to object to a continuing violation instruction constituted prejudicial error.

The State argues otherwise, arguing (1) that the continuing violation doctrine applies and (2) that, even if it does not apply, there was no prejudice since the trial court merged the counts at issue for sentencing. In interpreting § 9-343(a)(3), the State contends, *inter alia*, that the nature of environmental crimes renders them continuing in nature, and the "still present" language in the jury instruction conforms to the statute.

*Duncan v. State*, 282 Md. 385, 390 (1978) **is the controlling authority on the continuing violation doctrine** and holds:

> *Ordinarily, a continuing offense is marked by a continuing duty in the defendant to do an act which he fails to do. The offense continues as long as the duty persists, and there is a failure to perform that duty.*

**There is no Maryland case law known to the Court that addresses whether the continuing violation doctrine applies to the environmental crimes charged in this case**. The State, citing what the State claims to be analogous federal case law, argues that the continuing violation doctrine must apply to environmental laws, given the nature of the offenses. The Petitioner argues that [t]he federal cases cited by the State concern federal law, utilizing different terminology, and thus do not provide guidance in the instant case.

After careful consideration, and applying the *Strickland* standard, this Court cannot find that trial counsel was deficient for failing to object to the continuing violation instruction. Trial counsel testified at the September 11, 2015 Post-Conviction hearing that he researched the case law, consulted with other attorneys, and came to the conclusion that the jury instruction regarding the continuing violation was correct. This is a reasonable interpretation of the law, as **there is no controlling Maryland authority as to whether the continuing violation doctrine applies in cases involving environmental crimes**, and, logically, the adverse impact of disposing of pollutants obviously continues until the remedy is imposed. **In short, this is an unsettled question of law, and there are merits to both positions**. Viewed in that light, the Court cannot find that trial counsel's failure to object to the continuing violation instruction was deficient. *State v. Borchardt*, 396 Md. 586 (2007).

But even assuming, *arguendo*, that trial counsel's conclusion regarding the continuing violation jury instruction fell below the objective standard of reasonableness, the Court cannot grant relief unless the Court finds that the Petitioner suffered prejudice as a result of trial counsel's deficiency. In this case, the continuing violation counts were merged for sentencing. Thus, there was no prejudice and there is no basis exists [sic] to grant relief.

(Bold emphasis added; italics in original.)

Additional facts relevant to this appeal are discussed in greater detail below.

7

**Standard of Review**

The Sixth Amendment to the United States Constitution provides that a criminal defendant has the right to effective assistance of counsel in a criminal trial. U.S. CONST. amend. VI. This right applies, through the Due Process Clause of the Fourteenth Amendment, to defendants in state criminal proceedings. *State v. Jones*, 138 Md. App. 178, 204-05 (2001), *aff'd*, 379 Md. 704 (2004). Article 21 of the Maryland Declaration of Rights provides similar protections. *See Taylor v. State*, 428 Md. 386, 399 (2012).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-pronged test for reviewing claims of ineffective assistance of counsel. In *Taylor*, *supra*, 428 Md. at 399-400, the Court of Appeals described the two-pronged *Strickland* test as follows:

> Under both the Sixth Amendment and Article 21 of the Maryland Declaration of Rights, a criminal defendant is entitled to the assistance of counsel, which means "the right to the effective assistance of counsel." *Duvall v. State,* 399 Md. 210, 220–21, 923 A.2d 81, 88 (2007) (quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052) (quotation mark omitted). The defendant who claims that he or she received ineffective assistance of counsel, as a general rule under the test announced in *Strickland* and followed ever since, must make two showings: **"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense."** 466 U.S. at 687, 104 S.Ct. 2052. In regard to the first, "performance" prong of *Strickland,* the defendant must demonstrate that counsel's alleged acts or omissions, based on "the facts of the particular case, viewed as of the time of counsel's conduct," fell "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052. In regard to the second, "prejudice" prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

(Emphasis added.)

The first prong of the *Strickland* test requires a defendant to establish specific deficient "acts or omissions" of defense counsel. *Strickland*, *supra*, 466 U.S at 690. *See also State v. Borchardt*, 396 Md. 586, 604 (2007) ("Before deciding to act, or not to act, counsel must make a rational and informed decision on strategy and tactics based upon adequate investigation and preparation."). But there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland, supra*, 466 U.S. at 689, and that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The Court of Appeals has emphasized that, in order to satisfy this first prong, a defendant must also demonstrate "that counsel's actions were not the result of trial strategy." *Coleman v. State*, 434 Md. 320, 338 (2013) (reversing this Court and the post-conviction court and holding: "We do not see how trial counsel's failure to object because of his ignorance of the law could possibly be seen as sound trial strategy or a strategic choice."). In analyzing alleged deficiencies, a reviewing court must "avoid the *post hoc* second-guessing of decisions simply because they proved unsuccessful . . . ." *Evans v. State*, 396 Md. 256, 274 (2006). Further, the Supreme Court explained in *Strickland, supra*, 466 U.S. at 690-91:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular

investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

The second *Strickland* prong, which requires that any deficient performance actually prejudice the defendant, was discussed by the Court of Appeals in *State v. Sanmartin Prado*, 448 Md. 664 (2016), wherein the Court stated: "As to the second prong, we have explained that 'the standard to be used is whether there is a substantial or significant possibility that the verdict of the trier of fact would have been affected.'" *Id.* at 682 (quoting *Coleman, supra*, 434 Md. at 331). In *Newton v. State*, 455 Md 341, 355 (2017), the Court of Appeals described two ways in which a defendant can establish prejudice under this second prong:

> To establish the second prong — prejudice — the defendant must show either: (1) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; or (2) that "the result of the proceeding was fundamentally unfair or unreliable." *Coleman*, 434 Md. at 340–41, 75 A.3d 916 (citations omitted). The *Strickland* Court explained, "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

In *Mosley v. State*, 378 Md. 548, 572-73 (2003), the Court of Appeals declined to consider the defendant's arguments on direct appeal regarding the alleged ineffective assistance of trial counsel. The Court of Appeals stated that it would instead "adhere to our long-standing view that ineffective assistance of counsel claims are best tested in post-conviction proceedings and that review of such claims on direct appeal is limited to the rare exception where the record is sufficiently developed and the critical facts are not in dispute." *Id.*

In *Jones*, *supra*, 138 Md. App. at 209, we articulated the standard for appellate review of a post-conviction court's findings:

> We "will not disturb the factual findings of the post-conviction court unless they are clearly erroneous." *Wilson v. State,* 363 Md. 333, 348, 768 A.2d 675 (2001). But, a reviewing court must make an independent analysis to determine the "ultimate mixed question of law and fact, namely, was there a violation of a constitutional right as claimed." *Harris v. State,* 303 Md. 685, 699, 496 A.2d 1074 (1985). **In other words, the appellate court must exercise its own independent judgment as to the reasonableness of counsel's conduct and the prejudice, if any.** *Oken* [*v. State*], 343 Md. [256] at 285, 681 A.2d 30 [(1996)]. As we said in *State v. Purvey,* 129 Md. App. 1, 10, 740 A.2d 54 (1999), *cert. denied,* 357 Md. 483, 745 A.2d 437 (2000): "Within the *Strickland* framework, **we will evaluate anew the findings of the lower court as to the reasonableness of counsel's conduct and the prejudice suffered**. . . . As a question of whether a constitutional right has been violated, we make our own independent analysis by reviewing the law and applying it to the facts of the case."

(Emphasis added.) *Accord Sanmartin Prado, supra*, 448 Md. at 679.

## DISCUSSION

In his brief, Shortall contends that he received ineffective assistance of counsel because his defense counsel failed to object to the jury instructions proposed by the State regarding the multiple charges of violating the two regulations. Shortall argues that the State's reliance on a continuing violation theory to bring five separate charges for each regulatory violation, as opposed to one count for each regulation, was "legally unfounded." He maintains that there was no evidence of additional sewage disposal beyond the feces and toilet paper that were first observed on the first date of inspection. Shortall asserts: "The mere presence of the same evidence of a *prior* crime simply cannot, as a matter of law, constitute separate chargeable criminal offenses for each day the State and/or County decided to visit the property." Shortall further contends: "There

11

was no strategy [of defense counsel] here, no tactics or balancing of benefits or drawbacks of a particular position." Shortall claims that he suffered prejudice from defense counsel's failure to object to the jury instruction because, as a result of this instruction, the jury considered, and convicted him of, ten crimes instead of just two.

The State points to Env. § 9-343(a)(3), and argues that Shortall's defense counsel did not provide ineffective assistance of counsel because, the State contends, "[t]he continuing violations jury instruction was an accurate statement of the law." The State concedes: "There is no directly controlling Maryland case law that either interprets the specific language of § 9-343(a), or a 'continuing violation doctrine' in environmental criminal cases." Nevertheless, the State asserts that its interpretation of Env. § 9-343(a)(3) is supported by "the plain language and specific wording of the statute itself," and "case[ law] that addresse[s] the application of 'continuing violations' in other contexts." The State argues that Shortall's defense counsel acted reasonably in not objecting to the jury instruction because counsel performed his own research and came to a similar conclusion.

The State further asserts that, even if defense counsel's failure to object could be deemed "deficient," Shortall suffered no prejudice as a result because (a) it is likely that the trial judge would have overruled the objection, and (b) the continuing violation counts were merged for sentencing in any event.

We disagree with the post-conviction court's conclusion that there was no deficient performance. Even if there is, as the post-conviction court concluded, no "controlling" appellate opinion on point, the plain language of the regulations at issue and

12

Env. § 9-343(a)(3) do not support ten separate convictions for the two regulatory violations that were established by the evidence adduced at trial. There was no conceivable benefit to Shortall to be gained by not objecting to the non-pattern jury instruction that did not closely track the wording of either the regulations at issue or Env. § 9-343(a)(3). And trial counsel's failure to raise an objection placed the defendant in the position of not having preserved a fruitful issue for appeal. *See* Maryland Rule 4-325(e) ("No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection.").

"Whether a jury instruction was a correct statement of the law is a question of law, which we review without deference." *Seley-Radtke v. Hosmane*, 450 Md. 468, 482 (2016). The trial court does not have discretion to instruct the jury incorrectly with respect to the elements of a criminal offense. The Court of Appeals explained in *Seley-Radtke*: "As this Court has observed, . . . even in areas where a trial court has discretion, 'no discretion is afforded to trial [court]s to act upon an erroneous conclusion of law.' *John Hopkins Hosp. v. Pepper*, 346 Md. 679, 700, 697 A.2d 1358, 1368 (1997)." *Id*.

Moreover, when the criminal charge is a statutory offense, we generally focus on the language of the statute, which in this instance incorporates by reference the regulations that are the basis of the charges against Shortall. As this Court explained in *Jason Nathaniel Carter v. State*, ___ Md. App. ___, No. 290, September Term 2017, slip op. at 14, 2018 WL 1611319 at *8 (filed April 2, 2018):

13

To determine the elements of a statutory offense, we use the standard tools of statutory interpretation. *State v. Bey*, 452 Md. 255, 265 (2017). Where the plain language of the statute, within the statutory scheme and in light of the legislative purpose of the statute, is clear and unambiguous, no further inquiry is necessary. *Id.* at 265-66. We must give "words their natural and ordinary meaning," *Davis v. State*, 426 Md. 211, 218 (2012), and "the statute must be given a reasonable interpretation, not one that is absurd, illogical or incompatible with common sense," *Bey*, 452 Md. at 266.

Normally, where the plain language of a statute is clear, our inquiry into the legislative intent ends. *Id.* at 265.

As noted above, Shortall was charged with five separate violations of two specific regulations, and the court submitted a total of ten charges to the jury. These regulations each prohibit the affirmative act of disposing of sewage in certain situations; specifically, "[a] person may not dispose of sewage in a manner that may cause pollution . . ." (COMAR 26.04.02.02E); and "[a] person may only dispose of sewage" in accordance with an approved on-site sewage disposal permit (COMAR 26.04.02.02F). Neither of these regulations imposes a duty to remediate, regardless of whether that may be addressed in other regulations that were not the basis for the criminal charges against Shortall.[3]

Env. § 9-343(a)(3) states: "**Each day on which a violation occurs** is a separate violation under this subsection." (Emphasis added.) The regulations Shortall was

---

[3] For an example of a regulation that does impose a continuing duty to remediate the impact of an improper discharge, see COMAR 26.13.04.03B, which states:

> A transporter shall clean up any hazardous waste discharge that occurs during transportation or take such action as may be required or approved by federal, State, or local officials so that the hazardous waste discharge no longer presents a hazard to human health or the environment.

14

charged with having violated each use the word "dispose," and impose a duty to avoid taking a specific action, with no mention of a duty to mitigate or remediate the harm to the environment that may have been caused by the disposal. Pursuant to this plain language, the State was required to prove that an act of disposal had "occur[red]" on "[e]ach day" the State charged as a separate violation of either COMAR 26.04.02.02E or 26.04.02.02F.[4]

At trial, the State offered no evidence to prove that Shortall committed separate acts of disposal of sewage on the five separate dates that were the basis of the charges submitted to the jury. Richard Littlefield and Brian Baumgartner both testified that they were the first to discover evidence of unpermitted disposal of human waste during their inspection of Shortall's property on December 5. Ann Morse testified that, after confirming the existence of the originally observed discharge from the pipe on December 6, she returned to the property again on December 7 and found "[t]he same discharge pipe that I had seen the day before . . . there with the toilet tissue and . . . human waste." On cross-examination, Morse gave the following testimony:

> [BY DEFENSE COUNSEL]:    And when you went on December [6]th what you saw reflected what was in the photographs from Mr. Littlefield?
>
> [MORSE]:   Yes.
>
> [DEFENSE COUNSEL]: And when you went back on the 7th with Ms. Howell that again reflected what was from the December 5th photograph?

---

[4]  The statute also provides in Env. § 9-343(a)(2): "In addition to any criminal penalties imposed on a person convicted under this subsection, the person may be enjoined from continuing the violation."

[MORSE]:   Yes.

[DEFENSE COUNSEL]:   And your site visit on December 6?

[MORSE]:   Yes.

The only suggestion of any subsequent discharge came during Nony Howell's testimony. Howell testified that, when she returned to the site in January, she observed that snow around the pipe had melted: "You can see – it had been a dusting of snow that morning and you can see where there is discharge matter from the pipe has melted if you will the snow . . . ." Howell explained, however, that she could not determine exactly *why* the snow was melted: "[. . .] I don't know if it snowed on top of it or if it melted away just in that one section." Her testimony was not sufficient to support a criminal conviction for disposal of sewage on that date, or any other date subsequent to December 5, 2012. Aside from this observation by Ms. Howell, the State provided no evidence of additional acts of sewage disposal. Even the prosecutor did not argue otherwise during the State's argument in opposition to Shortall's motion for judgment when the trial judge asked the prosecutor to identify the evidence that any waste was deposited after December 5, 2012:

> [THE COURT]:   . . . What proof do we have that there was any – if the jury would find that it was human waste [–] was any human waste deposited there after December 5th[, the initial date of inspection]?
>
> [THE STATE]:   It's a continuing violation offense by the penalty Statute of itself until the matter is stopped, until the pipe is capped until it's –
>
> [THE COURT]:   Until it's physically not possible –
>
> [THE STATE]:   Until it's physically not possible to do it anymore.

16

* * *

It's a continuing ongoing violation that can be charged daily.

* * *

I would just note that the dates that we chose to charge were based on dates that someone had actually been to the site –

[THE COURT]:    These people were there.

[THE STATE]:    (Continuing) – as opposed to just charging random dates.

Moreover, there was evidence in this case that Shortall was ordered *not* to disturb or clean up the discharged waste the inspectors observed on December 5, 2012.

In spite of the State's failure to produce evidence of separate acts of disposal, the State persuaded the trial court that the phrase "each day on which a violation occurs" in Env. § 9-343(a)(3) supported the State's proposed instruction that the jury was required to apply a "continuing violation theory."  In support of this theory, the State said its strongest Maryland case is *Duncan v. State*, 282 Md. 385 (1978), a case in which the Court of Appeals held that the act of retaining stolen goods *was not* a continuing violation.  The Court explained in *Duncan*: "Ordinarily, *a continuing offense is marked by a continuing duty* in the defendant *to do an act which he fails to do*.  The offense continues as long as the duty persists, and there is a failure to perform that duty."  *Id*. at 390 (emphasis added).  The *Duncan* Court observed that "the criminal withholding of money or property was not a continuing offense."  *Id*. at 391.  And, similarly, the crime of retention of stolen property is but a single offense: "[T]he crime was committed at the

17

time Duncan accepted and retained the coat. . . . Retaining the goods thereafter was no more than a continuance of the result or effect of the original crime and not a continuing course of criminal conduct." *Id.* at 394. By analogy, a crime prohibiting an act of improper disposal is complete when the person has improperly disposed of the sewage.

The State cited no Maryland authority that would permit a court to construe Env. § 9-343(a)(3) in the manner that was supposedly addressed by the trial court's jury instruction that, "[p]ursuant to Maryland law for these specific charges every day on which a violation is still present constitutes a separate offense until the date the violation is corrected." As noted above, although there are indeed regulations that impose a continuing duty to take corrective action after the initial violation of the regulation, the specific language in the regulations that were the basis of the ten charges against Shortall did not do so. Consequently, the trial court's instruction was not a correct statement of the law applicable to this case.

Indeed, the post-conviction court did not conclude that the State's instruction regarding multiple convictions for a single discharge was a correct statement of the applicable law. The post-conviction court ruled:

> [T]here is no controlling Maryland authority as to whether the continuing violation doctrine applies in cases involving environmental crimes, and, logically, the adverse impact of disposing of pollutants obviously continues until the remedy is imposed. In short, this is an unsettled question of law, and there are merits to both positions.

But it does *not* logically follow that trial counsel provides effective assistance of counsel by failing to object to a jury instruction that is based upon "an unsettled question of law" and deviates from the statutory language in a material manner that is prejudicial

18

to the defendant. If there is a potentially meritorious argument that the instruction is erroneous, and there is no possible strategic benefit to the defendant from having the jury receive the arguably incorrect instruction, defense counsel renders deficient performance by failing to preserve that point for appeal. Here, the instruction that had been proposed by the State was not a pattern instruction that had been approved by any Maryland appellate court or recognized authority on Maryland jury instructions; there was no controlling Maryland case law addressing liability for multiple violations of these regulations; the language of the instruction was materially different from the language of the applicable statute; and the words used in the court's non-pattern instruction made it far more likely that the defendant would be convicted of multiple violations than would have been the case if the court's instruction had more closely tracked the words used in the statute and regulations. All of these reasons for objecting to the instruction were – or should have been – obvious to defense counsel, and should have prompted an objection to preserve these arguments pursuant to Rule 4-325(e).

Even if the interpretation of Env. § 9-343(a)(3) as applied to these regulations *was* an unsettled legal question, there was no good reason for defense counsel not to object to the jury instruction given by the trial court. Regardless of whether the judge was likely to overrule the objection, counsel would have preserved this issue for appellate review. Failing to object altogether is not a reasonable "trial strategy" when there is no possibility that this strategy could benefit Shortall's interests, and no downside whatsoever that could flow from preserving the legal argument for a possible appeal. *See Walker v. State*, 391 Md. 233, 263 (2006) ("[I]f a 'trial strategy' simply has no chance of furthering

19

counsel's client's interests, it cannot rightly, or in any sense, be considered 'reasonable' and is simply not entitled to even the slightest deference.").

With regard to *Strickland's* second prong (requiring a showing of prejudice), Shortall correctly asserts: "The[] improper convictions stem directly from the legal errors contained in the jury instructions . . . . Defense counsel's failure to object to the instructions prevented the formulation of a potential judicial remedy at trial, [and] precluded direct review of the instructions on appeal . . . . " We conclude that defense counsel's failure to object to the continuing violation instruction prejudiced Shortall. Had counsel properly objected to the jury instruction, and urged the trial court to track the language of the regulations and Env. § 9-343(a)(3) more accurately in any instruction given, there is a "reasonable probability" that the result of the trial would have been different. *Coleman*, *supra*, 434 Md. at 340-41. Shortall would have been subject to two criminal convictions at the most, rather than ten.[5]

Moreover, we disagree with the post-conviction court's finding that Shortall was not prejudiced because the continuing violation counts merged for sentencing. Even though these convictions merged for sentencing, ten convictions remain on Shortall's criminal record, at least eight of which directly resulted from defense counsel's failure to object to an erroneous jury instruction. That is prejudice to Shortall.

---

[5] And, if the trial judge had given the same instruction despite an objection, Shortall would have had the possibility of raising that point on appeal, rather than being foreclosed from doing so. Although the verdict as to the two charges in counts 2 and 3 may have been the same, Shortall would have eight less criminal convictions on his record.

20

**JUDGMENT OF THE CIRCUIT COURT FOR DORCHESTER COUNTY REVERSED AS TO COUNTS 6, 7, 10, 11, 14, 15, 18, AND 19, AND AFFIRMED AS TO COUNTS 2 AND 3. CASE REMANDED FOR THE CIRCUIT COURT TO CONDUCT A HEARING FOR RESENTENCING AS TO COUNTS 2 AND 3. COSTS TO BE PAID BY DORCHESTER COUNTY.**