*Yaw Poku Podieh v. State*, No. 31, September Term, 2019

**CONSTITUTIONAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL — ACTUAL CONFLICT OF INTEREST — PRESUMPTION OF PREJUDICE —** The Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights guarantee criminal defendants the right to effective assistance of counsel. Effective assistance of counsel includes conflict-free representation. In this case, where defense counsel is personally involved in litigation, and a witness to that proceeding is also the arresting officer in counsel's client's unrelated criminal case, a conflict of interest exists. Under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), an actual conflict of interest that adversely affects the representation is presumptively prejudicial. In *Taylor v. State*, 428 Md. 386 (2012), we adopted the three-prong test from *Mickens v. Taylor*, 240 F.3d 348 (4th Cir. 2001), to determine when a conflict of interest satisfies the *Sullivan* rule. To satisfy the *Mickens* test, a petitioner must prove: (1) that there was a plausible alternative defense strategy that defense counsel might have pursued; (2) which was objectively reasonable under the facts of the case known to defense counsel; and (3) that defense counsel's failure to pursue the strategy was linked to the conflict of interest. As a matter of first impression, the Court holds that to determine when a link exists under the third prong of *Mickens*, a petitioner must demonstrate that the alternative defense strategy was inherently in conflict with counsel's other loyalties or interests or that the alternative defense was forgone due to those other loyalties or interests. The Court holds that Petitioner satisfied his burden under *Mickens* and demonstrated that his defense counsel labored under an actual conflict of interest that adversely affected the representation.

Circuit Court for Frederick County
Case No. 10-K-15-057002
Argued: December 10, 2019

IN THE COURT OF APPEALS
OF MARYLAND

No. 31

September Term, 2019

_____

YAW POKU PODIEH

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Adkins, Sally D.,
   (Senior Judge, Specially Assigned)

   JJ.

_____

Opinion by Barbera, C.J.

_____

Filed: August 14, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

We consider in the present case what combination of facts and circumstances, and actions or inactions on the part of counsel while representing a defendant in a criminal matter, constitute a conflict of interest that is presumed prejudicial, thereby entitling the defendant to a new trial. The test for determining such a conflict is found in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a criminal defendant may receive a new trial based on an allegation of ineffective assistance of counsel. In the typical case involving such a challenge, the defendant is required to demonstrate both that counsel's performance was deficient and that such performance prejudiced the defense. *Id.* at 687. This general rule, however, has an exception: "The defendant is excused from proving the prejudice prong of the *Strickland* test upon a showing that counsel was 'burdened by an actual conflict of interest,' that is, the conflict is one that 'actually affected the adequacy of [defense counsel's] representation.'" *Taylor v. State*, 428 Md. 386, 391 (2012) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980) (internal citation omitted)). If the defendant carries that burden, then "prejudice to the outcome of trial is presumed." *Id.*

Following *Strickland*, the United States Court of Appeals for the Fourth Circuit articulated a three-part test to determine when a conflict of interest of the sort identified in *Sullivan* is both "actual" and has an "adverse impact" upon the defendant's constitutional entitlement to effective assistance, therefore satisfying the *Sullivan* rule. *See Mickens v. Taylor*, 240 F.3d 348 (4th Cir. 2001), *aff'd, Mickens v. Taylor*, 535 U.S. 162 (2002). Under the Fourth Circuit's test in *Mickens*, the defendant must establish: (1) a plausible alternative defense tactic that counsel could have pursued; (2) that the tactic was objectively reasonable under the circumstances; and (3) that there exists a link between the conflict

and the failure to pursue the tactic. *Id.* at 361. This Court adopted the *Mickens* three-prong test in *Taylor v. State*, 428 Md. 386 (2012). The question asked in the matter now before us is whether the third prong of the *Mickens* test is satisfied if the convicted defendant establishes either: that the alternative defense strategy was inherently in conflict with counsel's other loyalties or interests; or that the alternative defense was forgone due to those other loyalties or interests.

This case arises from a petition for post-conviction relief filed by Petitioner, Yaw Poku Podieh, in the Circuit Court for Frederick County. Petitioner asserted that he did not receive effective assistance of counsel as required by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights. The petition was based on, among other things, two issues now before this Court: (1) defense counsel's alleged conflict of interest with a police officer involved in the case; and (2) counsel's failure to inform Petitioner about the immigration consequences of pleading guilty to possession of heroin with intent to distribute. The post-conviction court granted Petitioner relief based on that court's finding an actual conflict of interest but denied relief on all other grounds. The State appealed the grant of relief on the conflict of interest issue, and Petitioner appealed the denial of relief on the immigration consequences issue. Reversing in part and affirming in part, the Court of Special Appeals held in an unreported opinion that neither the asserted conflict of interest nor the immigration advice amounted to ineffective assistance of counsel. We issued a writ of certiorari and now hold that defense counsel's conflict of interest rendered his representation of Petitioner constitutionally

2

deficient under the Sixth Amendment and Article 21. Because we hold that Petitioner's counsel rendered ineffective assistance based on the conflict of interest, we need not, and consequently do not, address whether the immigration advice given to Petitioner was also constitutionally deficient.

## I.

### Facts and Procedural History

Three cases form the foundation of the petition for post-conviction relief. Two are interrelated criminal cases stemming from a traffic stop of Petitioner and a subsequent search of his girlfriend's residence. The third is a civil suit against Petitioner's defense counsel that was related to a divorce proceeding involving the police officer who initiated the traffic stop.

### A. Underlying Cases

#### 1. *The Traffic Stop Case*

On February 10, 2015, Deputy Sheriff Michael David Ensor ("Deputy Ensor") stopped Petitioner for exceeding the posted speed limit. Upon approaching the vehicle, Deputy Ensor detected the odor of marijuana. Deputy Ensor asked Petitioner if he was in possession of marijuana, and Petitioner admitted to having "a little weed" in his pocket. Based on the odor and Petitioner's statement, Deputy Ensor conducted a search of Petitioner and the vehicle. The search revealed marijuana on Petitioner's person, two cellphones, and four small bags of heroin in the vehicle's center console. Deputy Ensor arrested Petitioner, and he was charged with possession of a controlled dangerous

substance and possession of a controlled dangerous substance with intent to distribute. Petitioner hired John R. Discavage, Esquire, to represent him.

Following the traffic stop, Deputy Sheriff Brian Elliot ("Deputy Elliot") obtained a search warrant for the cellphones recovered from the vehicle search.[1] Text message exchanges on the cellphones indicated to Deputy Elliot that Petitioner was engaged in narcotics distribution. Additionally, Petitioner placed phone calls while he was detained in jail following the traffic stop, and recordings of those phone calls captured Petitioner discussing drugs, which Deputy Elliot believed to be either marijuana or heroin.

Following Petitioner's release from detention, Deputy Elliot obtained a GPS warrant for Petitioner's vehicle and tracked his whereabouts. On July 8, 2015, Deputy Elliot observed Petitioner dispose of garbage and conducted a "trash pull."[2] Deputy Elliot "recovered a small blunt containing suspected marijuana, an altered freezer bag that is commonly used to package narcotics, two calling cards which are also common with individuals using disposable '[d]rop' phones for purposes of distributing narcotics, and loose cigar guts located throughout the bag of trash." A field test of the blunt returned

---

[1] It is not clear from the record whether Deputy Ensor was involved in Deputy Elliott's obtaining and executing the warrants in the search warrant case. We are left to surmise that the traffic stop performed by Deputy Ensor precipitated the subsequent searches performed by Deputy Elliott. If either or both of Petitioner's criminal cases had gone to trial, Deputy Ensor would likely have been called to testify about his encounter with Petitioner at the traffic stop.

[2] Garbage left in public or beside a street is not protected against warrantless searches and seizures under the Fourth Amendment. *See California v. Greenwood*, 486 U.S. 35, 40 (1988).

positive for marijuana. On July 16, 2015, Deputy Elliot conducted a second trash pull at the residence of Brittney Sewell, Petitioner's girlfriend, and more evidence of marijuana possession was recovered. Deputy Elliot applied for a search warrant for Ms. Sewell's residence, where Petitioner spent his nights, and described the traffic stop case, electronic communications, and trash pulls in his affidavit.

2. *The Search Warrant Case*

On July 17, 2015, Deputy Elliot obtained a warrant to search Ms. Sewell's residence, and on July 21, 2015, he conducted the search. The search produced approximately ten grams of heroin in ten individually-wrapped bags, 4.1 grams of marijuana, a marijuana grinder, a digital scale, and $654 located throughout the residence. Petitioner was subsequently charged with possession of a controlled dangerous substance, possession of a controlled dangerous substance with intent to distribute, possession of drug paraphernalia, and possession of marijuana with intent to distribute. Petitioner hired Mr. Discavage to represent him in the search warrant case, as well as the traffic stop case.

3. *The Civil Lawsuit Involving Mr. Discavage*

Deputy Ensor and his then-wife, Ms. Ensor, divorced in 2012. Mr. Discavage jointly represented the Ensors in their divorce proceedings and handled their settlement agreement. Ms. Ensor filed a lawsuit against Mr. Discavage in March 2015 for negligence, breach of fiduciary duty, intentional misrepresentation, and negligent misrepresentation related to Mr. Discavage's handling of their divorce. The complaint alleged that Mr. Discavage favored Deputy Ensor in the divorce proceedings by understating Deputy

5

Ensor's income or failing to verify his income. Ms. Ensor sought approximately $75,000 in damages. Discovery in the civil suit continued through early 2016, and the case was dismissed by stipulation on March 14, 2016.

## B. Circuit Court Proceedings

Petitioner's traffic stop case was set for pre-trial conference on July 10, 2015. Mr. Discavage requested a continuance to resolve some of the immigration issues because Petitioner is not a United States citizen. The case was continued to August 7, 2015. On August 7, 2015, Mr. Discavage requested a second continuance in light of the search warrant case and attendant charges. The traffic stop case resumed on September 25, 2015, and Mr. Discavage and the Assistant State's Attorney in that case, Ms. Roldan, jointly requested that a plea hearing on the traffic stop case be set for the same day as the pre-trial conference for the search warrant case. The circuit court granted the request.

The traffic stop case resumed on November 16, 2015. At that time, Mr. Discavage requested another continuance because he and Mr. Craven, the Assistant State's Attorney in the search warrant case, were in the process of negotiating "some type of global agreement" on the traffic stop case and the search warrant case.

On November 23, 2015, Petitioner entered a conditional *Alford* plea in the traffic stop case to possession of a controlled dangerous substance, which was contingent upon a global resolution of both the traffic stop case and the search warrant case. It was contemplated that if Petitioner and the State reached a global resolution of the two cases, Petitioner would withdraw his *Alford* plea and the State would enter *nolle prosequi* on the

6

charges from the traffic stop case. The State set forth the facts it would have proven had the traffic stop case gone to trial. Deputy Ensor would have been called to testify about initiating the traffic stop, detecting the odor of marijuana, searching Petitioner and the vehicle, and recovering four bags of heroin.

The sentencing hearing on the traffic stop case was scheduled to occur on January 8, 2016. A few days before that scheduled hearing, Mr. Discavage received a plea offer and additional discovery materials from the State, prompting him to request a continuance of the sentencing hearing. At that time, Mr. Discavage explained to the court that the continuance was necessary because the global plea was still being negotiated and there was a "potential conflict." Assistant State's Attorney Craven was not at the sentencing hearing. The following colloquy occurred out of Petitioner's earshot:

| The Court: | What's the other case? |
|---|---|
| Mr. Discavage: | The other case is . . . where's the case number, it's . . . 57002. |
| The Court: | Five seven? |
| Mr. Discavage: | Zero, zero, two. Because the additional discovery poses a potential conflict. I don't know that I need to deal with that, but . . . |
| The Court: | Not without Mr. Craven here. |
| Mr. Discavage: | A personal conflict, a personal conflict with one of the witnesses that's involved in this case. So I'd, that's the– |
| The Court: | Well, let's– |
| Mr. Discavage: | –additional . . . |

7

| The Court: | Why don't you and Mr. Craven go talk? |
|---|---|
| Mr. Discavage: | Yeah. We're gonna intend, we're gonna keep talking between now and Monday and hopefully we– |
| The Court: | And about the problem too– |
| Mr. Discavage: | –can come to some type of resolution. |
| The Court: | All right. |

There is no indication in the record that Mr. Discavage informed Mr. Craven about the "potential" conflict of interest or took any further action on the matter.

On January 12, 2016, Petitioner pleaded guilty in the search warrant case (case number 57002) to possession with intent to distribute a controlled dangerous substance. As a result, the conditional *Alford* plea was withdrawn, and the State entered *nolle prosequi* on all the other charges from both the traffic stop case and the search warrant case. Petitioner was sentenced to ten years' incarceration with all but 179 days suspended.

Once convicted and sentenced, Petitioner became automatically deportable. *See* 8 U.S.C. § 1227(a) ("Any alien . . . in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien … [has been] convicted of an aggravated felony at any time after admission . . ."). To avoid deportation during the pendency of his post-conviction proceedings, Petitioner filed a motion for modification of sentence. The court granted the motion and sentenced Petitioner to ten years' incarceration with all but eighteen months suspended.

8

## C. Post-Conviction Proceedings and Appeal

Petitioner, through new defense counsel, Ms. Michelle Martz, filed a petition for post-conviction relief on August 1, 2016. Petitioner alleged seven grounds in support of the claim that he had received ineffective assistance of counsel, two of which he raises here: (1) Mr. Discavage and Petitioner's separate immigration counsel, Mary Ann Shoff, misadvised him of the immigration consequences of his plea agreement; and (2) Mr. Discavage failed to disclose a personal conflict of interest.

On January 18 and 19, 2017, the Circuit Court for Frederick County held a hearing on the petition for post-conviction relief. Petitioner first testified about the immigration advice he was given. Petitioner claimed that neither Mr. Discavage nor Ms. Shoff advised him that pleading guilty to possession with intent to distribute heroin is an aggravated felony. Aggravated felonies lead to automatic deportation without the opportunity to have a hearing. 8 U.S.C. § 1229b(a)(3) ("The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien . . . has not been convicted of an aggravated felony.").

Petitioner then testified about Mr. Discavage's alleged conflict of interest. Petitioner testified that Mr. Discavage had disclosed to the circuit court at the anticipated sentencing hearing on January 8, 2016, that there was a potential conflict of interest in Petitioner's case. However, Mr. Discavage did not inform Petitioner of that conflict. It was not until Petitioner received a copy of the circuit court transcripts that he became aware

9

of the conflict. Petitioner averred that the conflict of interest prevented Mr. Discavage from providing effective assistance of counsel.

At the post-conviction hearing, Mr. Discavage revealed for the first time that the conflict of interest involved Deputy Ensor, the arresting officer in the traffic stop case.[3] The following transpired on direct examination:

| Ms. Martz: | What was your reasoning for, what was the conflict when you told Mr., when you told the judge that there was a personal conflict? |
|---|---|
| Mr. Discavage: | Conflict with a witness in a case that was being nolle prossed or that the State was dismissing. They were not, that was the, that was the conflict. It was a, it was a separate case, separate and apart from this case. |
| Ms. Martz: | But who was the person that you had a conflict with that you determined wasn't a conflict? |
| Mr. Discavage: | The pers – who is the person that I was considering potentially– |
| Ms. Martz: | Mmm-hmm– |
| Mr. Discavage: | –to be a conflict? Deputy Ensor. |
| Ms. Martz: | Deputy Ensor. And Deputy Ensor was a, was a witness for the State? |
| Mr. Discavage: | Correct. |
| Ms. Martz: | And was the arresting officer in the car stop case, correct? |
| Mr. Discavage: | Correct. |

---

[3] During her opening remarks, Petitioner's new defense counsel explained that "Discavage still hasn't really told me [what the conflict was], except that I believe inferentially he had . . . an interest in representing the seizing officer in this case."

When questioned about the conflict of interest, Mr. Discavage posited that his relationship with Deputy Ensor posed a potential conflict, but the conflict never manifested because the traffic stop case did not go to trial. In his recitation of events, he testified that the plea offer in the search warrant case was received on January 5, 2016, and that three days later he informed the circuit court that additional discovery materials transmitted with the plea offer posed a personal conflict. Mr. Discavage further testified that he did not discuss the conflict with the court after the sentencing hearing on January 8, 2016. Mr. Discavage also acknowledged that he never mentioned to Petitioner that he had a personal conflict of interest involving Deputy Ensor.

In describing the nature of the relationship, Mr. Discavage explained that he represented Deputy Ensor in a divorce case several years prior to his representation of Petitioner. Although the divorce was finalized, "there was still potential litigation with the parties to that case" at the time Petitioner hired Mr. Discavage. The circuit court pressed Mr. Discavage on the issue:

| | |
|---|---|
| The Court: | . . . But anyway, the bottom line is you, you thought there was a conflict, you mentioned it. But that case where he was a witness got nolle prossed and therefore your belief was the conflict ended. |
| Mr. Discavage: | As, correct. As well as the civil case that was pending that was being dismissed. |
| The Court: | Oh, really? So, okay, so the civil case got dismissed, the other one got nolle prossed. Conflict ends. |
| Mr. Discavage: | Correct– |

11

The Court:          In your opinion.

Petitioner's counsel questioned Mr. Discavage regarding his failure to inform Petitioner of the conflict. Mr. Discavage responded that if the traffic stop case went to trial, he would have brought the conflict to Petitioner's attention. Mr. Discavage explained that because "the case was dismissed it wasn't an issue that [they] had to deal with." Mr. Discavage also testified that the search warrant case—in which Deputy Ensor was not directly involved—was at the forefront of the plea negotiations. Additionally, Deputy Ensor was not a party to the separate civil suit against Mr. Discavage.

Because the conflict of interest issue was not exposed until the post-conviction hearing, the court reserved making a ruling on the issue to allow the parties to investigate the conflict. The post-conviction hearing resumed on February 21, 2017. The investigation revealed that Deputy Ensor's ex-wife, Sarah Ensor, sued Mr. Discavage on March 17, 2015, for issues arising from Mr. Discavage's representation of the Ensors in their divorce proceedings. Discovery in the lawsuit against Mr. Discavage overlapped with Mr. Discavage's representation of Petitioner and was ongoing as late as January 2016.

Additionally, prior to filing the case against Mr. Discavage, Ms. Ensor filed a Petition to Modify Custody and Child Support on June 11, 2014. Deputy Ensor retained Mr. Discavage to represent him in that proceeding on July 31, 2014. Ms. Ensor, through counsel, objected to Mr. Discavage representing Deputy Ensor in the custody and child support proceeding. Ms. Ensor argued that Mr. Discavage's having previously represented the Ensors in their divorce created a conflict of interest. Mr. Discavage withdrew from

12

representation. Privilege logs divulge, however, that Mr. Discavage remained in contact with Deputy Ensor and his subsequent counsel at least through March 31, 2015. Petitioner retained Mr. Discavage in February 2015.

## D. The Post-Conviction Court's Decision

In a written order dated April 4, 2017, the court granted Petitioner post-conviction relief. The court based its decision on its finding that Mr. Discavage had labored under a conflict of interest resulting from, at the pertinent time, his simultaneous involvement in two separate matters, both of which involved Deputy Ensor. The court found that at the same time Mr. Discavage was the named defendant in Ms. Ensor's then-pending lawsuit—in which Deputy Ensor likely would have been a fact witness—he was also Petitioner's defense counsel in the two criminal cases. The court reasoned that, but for the "global resolution" of those cases, it was virtually inevitable that Mr. Discavage would have filed both a motion to suppress the evidence obtained in the traffic stop case and a similar motion in the search warrant case.

In comparing the timeline of the civil suit against Mr. Discavage to the timeline in Petitioner's criminal cases, the court found that key events in those cases overlapped. For example, Ms. Ensor's complaint against Mr. Discavage was filed in March 2015, and the traffic stop case was transferred to circuit court from district court in May 2015 following a jury trial prayer. In October 2015, the court in the civil suit issued a scheduling order. The following month, Petitioner entered a conditional plea in the traffic stop case. On January 7, 2016, Ms. Ensor filed a Motion to Quash Subpoena and for Protective Order.

13

The next day, Mr. Discavage alluded to the court at Petitioner's sentencing hearing on the traffic stop case that there was "a potential conflict." Petitioner accepted the global plea in the traffic stop case and search warrant case on January 12, 2016, and the civil suit was dismissed by stipulation two months later.

Based on the foregoing, the post-conviction court found that an actual conflict of interest existed. The court emphasized that the ongoing relationship between Mr. Discavage and Deputy Ensor formed the foundation of the conflict of interest: Deputy Ensor was subpoenaed to produce documents and give a deposition in the civil suit and likely would have been a fact witness. The court found that "during the time Mr. Discavage was representing Petitioner, Mr. Discavage was engaged in litigation where maintaining a positive [rapport] with Deputy Ensor was in Mr. Discavage's best interest." The court further found that because of that conflict, Mr. Discavage did not inform Petitioner about his connection to Deputy Ensor, nor did he present Petitioner with the opportunity to waive the conflict.

The post-conviction court then turned to whether Petitioner was entitled to relief based on the conflict. The court cited *Sullivan*, pertinent language from which the Supreme Court repeated in *Strickland*. The post-conviction court also looked to this Court's decision in *Taylor v. State*, 428 Md. 386, 410 (2012). The court noted the presumed prejudice exception described in *Sullivan*, *Strickland*, and *Taylor* and understood from those cases that prejudice is presumed when a defendant alleges ineffective assistance of counsel based on an attorney's personal conflict of interest, and that conflict affected the attorney's

14

performance. The court further noted that this Court, in *Taylor*, adopted the three-part test set forth by the Fourth Circuit in *Mickens v. Taylor* to determine if the conflict of interest had an adverse impact on the representation, thus warranting a presumption of prejudice. 240 F.3d 348 (4th Cir. 2001).

Under *Mickens*, the petitioner must establish: (1) "a plausible alternative defense strategy or tactic that his defense counsel might have pursued;" (2) "that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney;" and (3) "that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." *Id.* at 361. If that test is satisfied, then the petitioner is entitled to a presumption of prejudice.

The post-conviction court found in the present case that Petitioner established those three elements. First, Mr. Discavage failed to file a motion to suppress evidence in either of Petitioner's criminal cases. Filing such a motion was an alternative, available tactic, thus satisfying the first element. Second, filing a motion would have been reasonable under the circumstances because such filings are the standard practice when a defendant is charged with drug possession.[4]

With regard to the third element of the *Mickens* test, the post-conviction court found that Mr. Discavage's failure to file a suppression motion was linked to his conflict with

---

[4] As we shall see later in this opinion, the parties appear not to quarrel seriously over the court's determination of the first and second *Mickens* prongs. It is therefore upon the third prong of the *Mickens* test and its application to the instant matter that we devote our attention.

15

Deputy Ensor. The inherent conflict existed in simultaneously challenging the underlying traffic stop in the criminal case and relying on Deputy Ensor as a fact witness in Ms. Ensor's civil suit against Mr. Discavage. The court reasoned that in the two criminal cases against Petitioner, Mr. Discavage's filing suppression motions almost invariably would have led, at a subsequent hearing, to Deputy Ensor testifying for the State and being subjected to cross-examination by Mr. Discavage. "Deputy Ensor was a witness in the case against Mr. Discavage, where Mr. Discavage would be counting on the very things he would place in question during cross-examination," such as "his recollection of events, his judgments, and potentially his character." Having determined that a conflict of interest existed, and that Petitioner met his burden under *Mickens*, as adopted in *Taylor*, the court granted the petition for post-conviction relief.[5]

## E. The Court of Special Appeals' Decision

In an unreported opinion, the Court of Special Appeals reversed the decision of the post-conviction court and held that the conflict of interest was merely potential, not actual. *State v. Podieh*, No. 560, Sept. Term 2017, 2019 WL 1643777 (April 16, 2019). The intermediate appellate court determined that the conflict of interest was only potential, and therefore not entitled to a presumption of prejudice, because no evidence supported the finding that Mr. Discavage needed to maintain a positive rapport with Deputy Ensor. *Id.* at *9. Rather, the circuit court's finding that an actual conflict of interest existed was conclusory. *Id.* at *10. The Court of Special Appeals reiterated that "a 'mere theoretical

---

[5] The court denied the six remaining grounds for relief in the petition.

conflict of interest' does not violate a defendant's right to counsel." *Id.* (quoting *Catala v. State*, 168 Md. App. 438, 460 (2006)).

The Court of Special Appeals further held that even if there was an actual conflict of interest, Petitioner did not satisfy the third prong of *Mickens*—that the alternative defense strategy and the conflict of interest were linked. *Id.* Contrary to the circuit court's ruling, the Court of Special Appeals determined that refraining from filing a motion to suppress, or from pursuing any other defense strategy proposed by Petitioner during the post-conviction process, may have been a reasonable course of conduct under the circumstances. *Id.* at *11. The Court of Special Appeals reasoned that there was insufficient evidence in the record from which to infer that Mr. Discavage was concerned about Deputy Ensor providing damaging testimony as a fact witness in the civil suit, such that Mr. Discavage would avoid cross-examining Deputy Ensor in the traffic stop case. *Id.* at *9. Therefore, Petitioner did not prove by a preponderance of the evidence that a conflict of interest between Mr. Discavage and Deputy Ensor was linked to Mr. Discavage's defense tactics. *Id.* at *12.

We issued a writ of certiorari to address Petitioner's claims of error on the part of the Court of Special Appeals, and hereby reverse the decision of that court.

## II.

### Standard of Review

A post-conviction court's finding on an ineffective assistance of counsel claim poses a mixed question of law and fact. *State v. Syed*, 463 Md. 60, 73 (2019). The factual

17

findings are reviewed for clear error, and the legal conclusions are reviewed *de novo*. *Newton v. State*, 455 Md. 341, 351–52 (2017).

## III.

## Discussion

To resolve the ineffective assistance of counsel claim in this case, we must determine if there was an actual conflict of interest that adversely affected Mr. Discavage's representation of Petitioner in the two criminal cases, thereby rendering constitutionally ineffective assistance of counsel.

Criminal defendants are guaranteed the right to counsel under the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights.[6] The right to counsel means "the right to effective assistance of counsel." *Duvall v. State*, 399 Md. 210, 221 (2007) (quoting *Strickland*, 466 U.S. at 686) (internal quotation marks omitted).

---

[6] The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The right is applicable to the states through the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 343–44 (1963).

Article 21 of the Maryland Declaration of Rights declares:

That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath; and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty.

## A. Presumption of Prejudice Under *Strickland* and *Sullivan*

In the seminal case *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test to determine when counsel's actions violate a defendant's constitutional right to effective assistance of counsel. First, the defendant bears the burden of showing "that counsel's performance was deficient." *Id.* at 687. To prevail on the "performance" prong, the defendant must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Counsel performs deficiently when "the facts of the particular case, viewed as of the time of counsel's conduct," reveal that counsel's acts or omissions fell "outside the wide range of professionally competent assistance." *Id.* at 690.

Under the second prong of the *Strickland* test, "the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. The second, "prejudice" prong is satisfied upon a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The *Strickland* Court recognized an exception to the two-prong test when the ineffective assistance of counsel claim is premised on an actual conflict of interest. The *Strickland* Court explained:

> Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. Moreover, such circumstances involve impairments of the Sixth Amendment right that are

19

easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent.

> One type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice. In *Cuyler v. Sullivan*, . . . the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, . . . it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the *per se* rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance.

*Id.* at 692 (citations and quotations omitted).

The *Strickland* Court looked to *Cuyler v. Sullivan*, 446 U.S. 335 (1980), in recognizing the "presumed prejudice" exception to the prejudice prong. *Id.* *Sullivan* involved an alleged conflict of interest arising from the representation of three separately-tried co-defendants by two private attorneys. 446 U.S. at 337–38. The Court was asked to decide if the possibility of a conflict of interest establishes that the defendant was denied the right to effective assistance of counsel. *Id.* at 345. Answering in the negative, the *Sullivan* Court explained that when the defendant raises no objection at trial to the conflict,[7]

---

[7] There is a separate standard when the defendant notifies the court in a timely manner about a possible conflict of interest. That factual scenario was addressed by this Court in *Lettley v. State*, 358 Md. 26, 38–39 (2000):

the defendant is charged with "demonstrat[ing] that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348. The *Sullivan* Court held that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Id.* at 349–50.

*Sullivan* left open the question of the defendant's burden of proof including, specifically, whether the defendant must demonstrate an adverse effect on counsel's representation in addition to the existence of the conflict. That question was answered in *Mickens v. Taylor*, 535 U.S. 162 (2002). The Supreme Court held that an actual conflict of interest is not "something separate and apart from adverse effect." *Id.* at 172 n.5. The precise question before the *Mickens* Court focused on "the effect of a trial court's failure to inquire into a potential conflict upon the *Sullivan* rule that deficient performance of counsel must be shown." *Id.* at 174.

This Court adopted, in *Taylor v. State*, 428 Md. 386 (2012), the Fourth Circuit's three-part standard from *Mickens* to determine the existence of an adverse effect. This standard is discussed in greater detail below.

---

[When] the trial court is not advised of the conflict in a timely manner, the [*Sullivan*] standard applies. In order to establish a violation of the Sixth Amendment right to effective assistance of counsel, the defendant must show that an actual conflict of interest adversely affected his lawyer's performance. On the other hand, when the defendant advises the trial court of the possibility of a conflict of interest, the *Glasser/Holloway* standard applies. "[A] court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel." *Wheat v. United States*, 486 U.S. 153, 160, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

21

**B.  Actual Conflict and Adverse Impact Under *Mickens* and *Taylor***

While *Mickens* principally addressed an issue not relevant to the instant case, the Supreme Court remarked that "the *Sullivan* standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect.  An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens*, 535 U.S. at 172 n.5.  The presumption of prejudice will not arise unless the defendant establishes that "the conflict has significantly affected counsel's performance." *Id.* at 173.

The presumption of prejudice when an actual conflict of interest exists, as detailed in *Sullivan*, *Strickland*, and in both *Mickens* decisions, was evaluated by this Court in *Taylor v. State*.  In *Taylor*, the defendant raised an ineffective assistance of counsel claim on collateral review premised on a conflict of interest.  428 Md. at 396.  The alleged conflict resulted from the defendant's lawyer suing his client—the defendant—for unpaid legal fees during the representation without obtaining the client's informed consent.  *Id.*  We held that a conflict of interest arises where counsel sues his client for unpaid legal fees concomitantly with the representation.  *Id.* at 410.  By suing the client while the representation was on-going, the relationship between counsel and client became adversarial.  *Id.*  That type of conflict prompted the same concerns surrounding conflicts arising from the representation of multiple clients, and thus similarly warranted a presumption of prejudice.  *Id.*  "This is because the precise degree of prejudice to the outcome of the trial that could result from an actual attorney-created conflict is too difficult

22

to determine, and the right to effective assistance of counsel, pursuant to both the Sixth Amendment and Article 21, remains too fundamental to risk." *Id.* Having determined that the type of conflict in *Taylor* may be entitled to a presumption of prejudice, we were then left to decide whether the defendant met his burden of proof. *Id.* at 411.

The defendant needed to establish "that there was an actual conflict of interest in order for prejudice to the defense to be presumed." *Id.* We looked to *Mickens* for the definition of actual conflict: a conflict that adversely affects counsel's representation of the defendant. *Id.* (citing *Mickens*, 535 U.S. at 172 n.5). That is a circumstance-specific inquiry. *Id.* at 413. In its opinion, the post-conviction court relied upon the Maryland Lawyers' Rules of Professional Conduct 1.7 in concluding that a conflict of interest existed.[8] *Id.* at 411, 415. But, because the post-conviction court did not analyze the case-specific facts to determine whether the conflict had an adverse impact on the representation, the case was remanded for further proceedings. *Id.* at 415–16. We directed the court to utilize the three-prong test set forth in *Mickens* to determine if the conflict of interest adversely affected counsel's performance. *Id.* at 416. Under that test, the defendant must prove by a preponderance of the evidence:

> (1) a plausible alternative defense strategy or tactic that his defense counsel might have pursued;
>
> (2) that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney; and

---

[8] On July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and were recodified, without substantive changes, to Title 19 of the Maryland Rules.

23

(3) that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

*Id.* (quoting *Mickens v. Taylor*, 240 F.3d 348, 361 (4th Cir. 2001), *aff'd without consideration of this point*, 535 U.S. 162 (2002)) (quotation marks removed).

## C. The Instant Matter

Petitioner argues that Mr. Discavage's performance amounted to ineffective assistance of counsel under the Sixth Amendment and Article 21 of the Maryland Declaration of Rights. According to Petitioner, the deficient performance stemmed from Mr. Discavage's on-going relationship with Deputy Ensor, which created a conflict of interest. Petitioner asserts that a presumption of prejudice arose under the *Sullivan* rule— thus warranting relief on the ineffective assistance of counsel claim—because there existed an actual conflict which adversely affected the representation, in satisfaction of the three-prong *Mickens* test. In response, the State argues that there is insufficient evidence supporting the inference that a conflict of interest existed, and even if a conflict existed, Petitioner did not establish a link between the conflict and Mr. Discavage's deficient performance as required under the third prong of *Mickens*.

For the presumption of prejudice to arise, Petitioner must prove that counsel labored under an actual conflict of interest. *See Sullivan*, 446 U.S. at 349–50. An actual conflict of interest is one that adversely affected counsel's performance. *Mickens*, 535 U.S. at 172 n.5. Whether a conflict of interest adversely affected counsel's performance is determined by applying the test promulgated by the Fourth Circuit in *Mickens*. 240 F.3d at 361.

24

We begin by exploring whether Mr. Discavage labored under an actual conflict of interest. Next, we evaluate whether that conflict adversely affected Mr. Discavage's performance. For reasons set forth below, we hold that Mr. Discavage's on-going relationship with Deputy Ensor amounted to a conflict of interest, and that conflict adversely affected Mr. Discavage's representation of Petitioner. Therefore, Petitioner was denied effective assistance of counsel under the Sixth Amendment and Article 21.

1. *Actual Conflict of Interest*

A conflict of interest arises when counsel is embroiled as a defendant in on-going litigation and one of the witnesses in that litigation is also the arresting officer in an unrelated criminal case involving counsel's client. This Court has repeatedly made clear that ineffective assistance of counsel claims are not exclusive to conflicts of interest stemming from the representation of multiple clients. *See Taylor*, 428 Md. at 408–09; *Duvall*, 399 Md. at 237; and *Lettley*, 358 Md. at 34. In *Lettley*, we explained that "the defendant's right to conflict-free representation is not limited to situations involving multiple representation, but extends to any situation in which defense counsel owes conflicting duties to the defendant and some other third person." 358 Md. at 34. "Although conflicts of interest usually occur when an attorney represents multiple clients, . . . a conflict may also exist between an attorney's private interests and those of the client." *United States v. Magini*, 973 F.2d 261, 264 (4th Cir. 1992).

The parties rely on the Fourth Circuit's *Mickens* decision and the three-part test set forth therein. In affirming the Fourth Circuit's en banc decision, however, the Supreme

25

Court did not explicitly embrace the three-prong test outlined by the lower federal court. Instead, the Supreme Court clarified that "the *Sullivan* standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens*, 535 U.S. at 172 n.5.  The Supreme Court further noted that, under *Sullivan*, "the rule [to be] applied when the trial judge is not aware of the conflict (and thus not obligated to inquire) is that prejudice will be presumed only if the conflict has significantly affected counsel's performance—thereby rendering the verdict unreliable, even though *Strickland* prejudice cannot be shown." *Id*. at 172–73.

Petitioner argues that Mr. Discavage rendered ineffective assistance of counsel because Mr. Discavage labored under a conflict of interest as a result of Deputy Ensor's involvement in Ms. Ensor's civil suit against Mr. Discavage.  Mr. Discavage's concurrent relationship with Deputy Ensor as a witness in both the civil suit and Petitioner's criminal cases, at minimum, created a potential ethical conflict of interest under MARPC 19-301.7. We acknowledged in *Taylor* that an ethical violation premised on a conflict of interest does not conclusively establish that an actual conflict of interest existed for Sixth Amendment and Article 21 purposes.  428 Md. at 412.  It is, however, indicative of at least a potential conflict of interest.  The Rule states:

> (a) Except as provided in section (b) of this Rule, an attorney shall not represent a client if the representation involves a conflict of interest. **A conflict of interest exists if:**
>> (1) the representation of one client will be directly adverse to another client; or

**(2) there is a significant risk that the representation of one or more clients will be materially limited by the attorney's responsibilities to another client, a former client or a third person or by a personal interest of the attorney.**

(b) Notwithstanding the existence of a conflict of interest under section (a) of this Rule, an attorney may represent a client if:

(1) the attorney reasonably believes that the attorney will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the attorney in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.

MARPC 19-301.7 (emphasis added).

Ms. Ensor's civil suit alleging that Mr. Discavage favored Deputy Ensor in their divorce commenced in March 2015. Mr. Discavage noted his appearance in the traffic stop case—in which Deputy Ensor was the arresting officer—in circuit court in May 2015 following a jury trial prayer. Petitioner entered his conditional plea in the traffic stop case in November 2015, and his global plea in the search warrant case in January 2016. Ms. Ensor's civil suit against Mr. Discavage did not end until March 2016. Mr. Discavage never informed Petitioner about the civil suit and Deputy Ensor's involvement as a witness in it even though the civil suit and criminal cases occurred simultaneously. Despite MARPC 19-301.7 prohibiting counsel from representing a client when counsel's personal conflict of interest poses a "significant risk that the representation . . . will be materially limited," Mr. Discavage nonetheless represented Petitioner without his informed consent.

More saliently, Mr. Discavage admitted to the trial court at the sentencing hearing on January 8, 2016, and at the subsequent post-conviction hearing that he had a conflict of

27

interest. Yet, at the subsequent post-conviction hearing, Mr. Discavage testified that he believed the conflict of interest did not mature from a potential conflict to an actual conflict because the traffic stop case never went to trial.

The global plea in the search warrant case did not absolve Mr. Discavage of the conflict of interest. As the Supreme Court stated in *Strickland*, "[t]he purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." 466 U.S. at 691–92; *see also Mosley v. State*, 378 Md. 548, 557 (2003) ("When a defendant is denied effective assistance of counsel, it is the integrity of the adversarial process that is compromised."). Mr. Discavage's conflict of interest with Deputy Ensor casts doubt upon the integrity of the plea negotiations in both the traffic stop case and the search warrant case. Deputy Ensor was subpoenaed as a fact witness and to produce documents in the civil suit against Mr. Discavage. That created a concurrent conflict of interest because Mr. Discavage's interactions with Deputy Ensor in Petitioner's criminal cases could bleed into the civil suit and impact Mr. Discavage personally. As such, Mr. Discavage's loyalties were divided between his personal interests and those of Petitioner.

The State argues that if there existed an actual conflict, it inhered only in the traffic stop case, and that case was dismissed. The State's argument is unavailing. There was a global plea agreement encompassing both the traffic stop case and the search warrant case. Dismissal of the traffic stop case was contingent upon the plea in the search warrant case. As discussed above, there was a conflict in the traffic stop case, and that case would not

have been dismissed but for the plea in the search warrant case now challenged by Petitioner.

The State attempts to minimize Mr. Discavage's conflict of interest by noting that the conflict likely could have been waived by Petitioner. The conflict of interest, however, was not brought to Petitioner's attention; Mr. Discavage never gave Petitioner the opportunity to waive the conflict.

Based on Mr. Discavage's ethical conflict of interest and admission to the conflict, the post-conviction court was not clearly erroneous in finding that there existed a conflict of interest for Sixth Amendment and Article 21 purposes. Mr. Discavage owed a duty to represent Petitioner zealously in Petitioner's criminal cases.

If Mr. Discavage's relationship with Deputy Ensor had been grounded exclusively in the 2012 divorce proceedings, no conflict of interest rising to the level of ineffective assistance of counsel would likely exist. Mr. Discavage labored under a conflict of interest not because of his successive representation of Deputy Ensor followed by Petitioner, but because of the concurrent nature of Ms. Ensor's civil suit and Petitioner's criminal cases—both of which significantly involved Deputy Ensor. Mr. Discavage had a personal stake in the outcome of the civil suit, and as such, had his loyalties divided between himself and Petitioner.

2. *Presumption of Prejudice*

To be entitled to a presumption of prejudice under the *Sullivan* rule, Petitioner must prove that Mr. Discavage's conflict of interest adversely affected the representation. As

29

we explained in *Taylor*, whether counsel's conflict of interest had an adverse effect on representation is a circumstance-specific inquiry. 428 Md. at 415. The *Mickens* test guides our determination. To satisfy that test, Petitioner must establish by a preponderance of the evidence: (1) an alternative defense strategy or tactic that defense counsel might have pursued; (2) that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney; and (3) that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict. *Mickens*, 240 F.3d at 361.

The parties contest the analysis of the third prong. Petitioner urges this Court to adopt *United States v. Nicholson*, 611 F.3d 191, 212 (4th Cir. 2010), which set forth two alternative methods of satisfying *Mickens*'s third prong. The State cautions against adopting *Nicholson* and counters that insufficient evidence supports the post-conviction court's conclusion that the conflict of interest was linked to an adverse effect on the representation.

### *Alternative Methods of Proving the Third Prong of the* **Mickens** *Test*

In *Nicholson*, the defendant asserted an ineffective assistance of counsel claim premised on his counsel's failure to file a downward departure motion based on self-defense during the sentencing proceedings. 611 F.3d at 194. Nicholson pleaded guilty to possession of a firearm and ammunition by a felon, which he repeatedly asserted was for protection against Lorenzo Butts. *Id.* at 194–95. Following his conviction, Nicholson learned that his defense counsel simultaneously represented Butts. *Id.* at 195. In a prior proceeding, the Fourth Circuit held that counsel's representation of Nicholson and Butts

30

was a conflict of interest. *Id.* at 196. Before the Fourth Circuit a second time, the court applied its test from *Mickens* to determine if the conflict adversely affected the representation of Nicholson. *Id.* at 206.

In doing so, the *Nicholson* court was tasked with clarifying how the third prong should be analyzed. The court looked to *Freund v. Butterworth*, 165 F.3d 839, 860 (11th Cir. 1999), which outlined two alternative tests used to determine the existence of a link between the conflict and alternative defense strategy. *Id.* at 212. The court stated:

> With respect to the third prong—that counsel's failure to pursue the objectively reasonable defense strategy was linked to the conflict—the *Freund* court explained that the petitioner is entitled to prove such a link in either of two ways: (1) by "establish[ing] that the alternative defense was inherently in conflict with . . . the attorney's other loyalties or interests" . . . , or (2) by otherwise showing that the alternative defense was "not undertaken due to" those other loyalties or interests[.]

*Id.*

The Fourth Circuit held that defense counsel's filing of a downward departure motion in his client's case was inherently in conflict with counsel's representation of Butts. *Id.* at 216. "[A]n alternative defense and the lawyer's other loyalties or interests are 'inherently in conflict' if they are 'inconsistent' with each other." *Id.* at 213. The court found that if counsel filed the motion, counsel "would act contrary to (and disloyal to) the interests of client Butts by portraying him as a murderer, thus potentially jeopardizing Butts's position on appeal and in any future prosecutions." *Id.* at 215. Because the conflict was "inextricably woven into" the failure to file the motion, Nicholson satisfied the third prong of *Mickens*. *Id.* at 216. The court acknowledged that the conflict did not manifest

31

in alternative defense strategies—just the strategy that placed the interests of counsel's clients at odds. *Id.* (explaining that "the competing interests of Nicholson and Butts were plainly stuck to [counsel's] tactical considerations with respect to the self-defense departure motion" as opposed to alternative tactics).

With our decision in *Taylor*, 428 Md. at 416, we formally adopted the three-prong test that the Court of Appeals for the Fourth Circuit, sitting en banc, established in *Mickens*. The tests outlined in *Nicholson* and *Freund* are the most appropriate methods for analyzing *Mickens*'s third prong. The Fourth Circuit decided both *Mickens* and *Nicholson*. Additionally, a majority of the federal courts of appeal utilize the alternative tests that we now adopt. *See e.g.*, *United States v. Arrington*, 941 F.3d 24, 41 (2d Cir. 2019) (requiring defendant to demonstrate a "plausible alternative defense strategy or tactic [that] might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."); *Nicholson*, 611 F.3d at 212; *Hammon v. Ward*, 466 F.3d 919, 930 (10th Cir. 2006) ("[D]efense counsel's performance [is] adversely affected by an actual conflict of interest if a specific and seemingly valid or genuine alternative strategy or tactic was available to defense counsel, but it was inherently in conflict with his duties to others or to his own personal interests.") (quoting *United States v. Bowie*, 892 F.2d 1494, 1500 (10th Cir. 1990)) (alterations in original); *United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005) ("[T]o show adverse effect, a defendant need not demonstrate prejudice . . . but only that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in

32

conflict with or not undertaken due to the attorney's other loyalties or interests.") (internal quotations omitted); *United States v. Sotomayor-Vazquez*, 249 F.3d 1, 15 (1st Cir. 2001) (same test); *Freund*, 165 F.3d at 860 (same test); *United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir. 1988) (same test). *But see McFarland v. Yukins*, 356 F.3d 688, 707 (6th Cir. 2004) (finding adverse effect "where counsel fails to pursue a strong and obvious defense, when pursuit of that defense would have inculpated counsel's other client, and where there is no countervailing benefit to the defendant from foregoing that defense or other explanation for counsel's conduct").

### *Application of the* Mickens *Test*

The post-conviction court correctly determined that Petitioner satisfied the first prong of the *Mickens* test. The court found that Mr. Discavage did not file motions to suppress in either of Petitioner's cases. The court was unequivocal in declaring that filing a motion to suppress in a plain-smell, drug possession case "is fairly standard practice in criminal cases. Where the Defendant is charged with possession of drugs, has made statements to police, or where the grounds for the search warrant are in question in any way, this Court feels strongly a motion to suppress should have been filed." There existed a plausible alternative defense strategy that Mr. Discavage could have pursued: he could have filed a motion to suppress the drugs discovered as a result of the traffic stop. If the motion was successful, the charges arising from the traffic stop would have been dropped and the affidavit supporting the search warrant would have been undermined.

33

The second *Mickens* prong is a question of law. We agree with the post-conviction court that filing a motion to suppress in a plain-smell, drug possession case is objectively reasonable, if not expected. *See Nicholson*, 611 F.3d at 206–07 ("[A]lthough the second *Mickens* prong requires findings on the facts known to the lawyer at the time of his tactical decision, the ultimate question involves a conclusion of law reached under an objective standard: whether, considering the facts known to the lawyer, the alternative defense strategy was 'objectively reasonable.'") (quoting *Mickens*, 240 F.3d at 361). Petitioner is required only to establish that the alternative tactic would have been objectively reasonable under the circumstances, not that it would have been successful. *See Mickens*, 240 F.3d at 361.

Under the facts known to Mr. Discavage while representing Petitioner, filing a suppression motion remained objectively reasonable throughout the representation. Following the traffic stop in February 2015, Petitioner faced single counts of possession of a controlled dangerous substance and possession with intent to distribute a controlled dangerous substance. Those charges occurred as a result of Deputy Ensor's alleged detection of the odor of marijuana. No other evidence indicated that Petitioner possessed drugs until Deputy Ensor questioned Petitioner about the marijuana. Filing a motion to suppress under those circumstances was the objectively reasonable course of action for two primary reasons. First, the drugs would have been inadmissible in the traffic stop case if Petitioner prevailed on the motion. Second, Petitioner is a non-citizen, and Mr. Discavage was aware of that from the onset of the representation. Mr. Discavage was also aware that

34

criminal proceedings against Petitioner posed immigration consequences for him. As Petitioner's immigration counsel explained, "unless Petitioner was able to negotiate a plea to Possession of Marijuana – less than 30 grams, Petitioner was 'screwed.'" Under those circumstances, Mr. Discavage should have challenged the traffic stop in an attempt to subvert his client's criminal charges, and therefore prevent potential immigration issues. Nothing in the record explains why a motion to suppress was not filed. *See Gagnon v. Scarpelli*, 411 U.S. 778, 787 (1973) ("[L]awyers, by training and disposition, are advocates and bound by professional duty to present all available evidence and arguments in support of their clients' positions and to contest with vigor all adverse evidence and views.").

As for the third prong of *Mickens*, Petitioner argues that the failure to file a motion to suppress was linked to Mr. Discavage's conflict of interest. We agree and affirm the post-conviction court's finding that filing a motion to suppress in the traffic stop case was inherently in conflict with Mr. Discavage's relationship with Deputy Ensor. Had Mr. Discavage filed a motion to suppress in the traffic stop case, Deputy Ensor would have been called to testify. In that situation, Mr. Discavage would have cross-examined Deputy Ensor and questioned his recollection and attacked his credibility, i.e., questioned whether Deputy Ensor genuinely detected the odor of marijuana and properly conducted the traffic stop and arrest. Such a confrontation between defense counsel and the arresting officer called as the State's witness is innately adversarial.

In juxtaposition, Deputy Ensor would likely have been a fact witness in the civil case, the very subject of which related to the allegation that Mr. Discavage improperly

favored Deputy Ensor in his divorce from Ms. Ensor. Mr. Discavage would undoubtedly be better served by a friendly witness—one who was at the center of the controversy—than one that is hostile or ornery. In the criminal cases, Mr. Discavage would impugn Deputy Ensor; in the civil case, Mr. Discavage would rely on Deputy Ensor to absolve Mr. Discavage of wrongdoing. Maintaining a positive rapport with Deputy Ensor for the sake of a positive outcome in the civil case was inherently in conflict with cross-examining Deputy Ensor in Petitioner's criminal cases.

Accordingly, we hold that Petitioner satisfied his burden of proof in establishing that the failure to file a motion to suppress was linked to Mr. Discavage's on-going relationship with Deputy Ensor. Petitioner established that Mr. Discavage labored under a conflict of interest and satisfied all three prongs of the *Mickens* test. Because counsel had a conflict of interest that adversely affected the representation, the *Sullivan* rule is met, and Petitioner is entitled to a new trial with conflict-free representation.

We caution against broadly interpreting the conclusion reached today beyond the facts presented in the case *sub judice*. Applying the *Mickens* test requires a case-by-case analysis, and the facts presented here lead to the determination that an actual conflict of interest exists in the instant matter. Specifically, Mr. Discavage operated under a concurrent conflict of interest whereby his loyalties were divided between himself and Petitioner because Petitioner's criminal cases and Ms. Ensor's civil suit against Mr. Discavage occurred simultaneously. We are not holding that a conflict of interest exists automatically where there is successive representation by defense counsel of a former

36

client who later becomes a witness for the State against a current client in an unrelated matter. Nor do we take a position on whether Petitioner could have waived Mr. Discavage's conflict of interest.

## IV.

## Conclusion

The Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights guarantee criminal defendants the right to conflict-free representation. Where counsel labors under an actual conflict of interest, the client is entitled to post-conviction relief if that conflict adversely affected the representation. *See Sullivan*, 446 U.S. at 349–50. The three-part test set forth in *Mickens* determines whether the conflict adversely affected the representation. 240 F.3d at 361. To answer the third prong of the *Mickens* test, we adopt the alternative tests set forth in *Nicholson*. 611 F.3d at 212. In applying those tests, we hold that Petitioner was denied effective assistance of counsel.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE CIRCUIT COURT FOR FREDERICK COUNTY. COSTS TO BE PAID BY THE STATE.**